(83 South. 43)

No. 21906.

ROE et al. v. CALDWELL.

(June 6, 1916. On the Merits, June 30, 1919. Rehearing Denied Oct. 14, 1919.)

*(Syllabus by Editorial Staff.)*

1. APPEAL AND ERROR ☜608(1) — TRANSCRIPTS OF FORMER APPEAL—RIGHT TO USE.

The transcripts of former appeals form parts of the records of the Supreme Court, and may be used in other appeals with its permission.

On the Merits.

*(Syllabus by the Court.)*

2. PARTIES ☜51(4)—BRINGING IN ATTORNEY AS COPLAINTIFF—CONTRACTS OF EMPLOYMENT—FILING.

Act No. 124 of 1906, authorizing contracts of employment between client and attorney to be filed in a pending suit, is intended as a means of protection to the attorney with respect to the contingent fee for which such contracts provide, and not as a basis upon which a defendant can require a plaintiff to bring his attorney into his suit as coplaintiff.

3. PLEADING ☜280 — SUPPLEMENTAL ANSWER — TIME FOR FILING — STRIKING ANSWER.

A supplemental answer injecting new issues comes too late, and is properly stricken out, when filed after the taking of the testimony is closed and the case is submitted; and that is equally true, though it may have become necessary, after the submission, in consequence of the death of the original plaintiff, to make a new party plaintiff, and though the case has been assigned for reargument.

4. GUARDIAN AND WARD ☜100—TUTORSHIP — SALE OF LAND AT PUBLIC AUCTION — RIGHTS OF PURCHASER — AGREEMENT FOR PRIVATE SALE.

One who buys the land of a minor at a sale made by order of court, at public auction, in accordance with the recommendation of a family meeting, with knowledge of the fact that he could not have bought, by private contract, from the stepfather and cotutor of the minor, could have no reason to imagine that he could attend such auction, make the highest bid for the entire tract, thereby causing it to be adjudicated to him, sign a notarial act completing the transaction, take possession of the entire tract, so adjudicated, and sell an undivided one-half interest therein for cash, partition the tract between his vendee and himself, and thereafter, by the production of a previously executed writing between the cotutor and himself, showing that the entire tract was to be held as owned by them in indivision, and oral testimony to a previous understanding between him and the cotutor to the effect that he was buying (at the auction) one-half of the land, at one-half the price at which it was adjudicated to him, defeat the judicial sale as made, and the purpose of the law in requiring it to be made at public auction, and convert it into a private sale, from the cotutor to him, of one-half the land at one-half the price per acre, as determined by such adjudication.

5. GUARDIAN AND WARD ☜101, 104—TUTORSHIP—SALE OF MINOR'S LAND BY TUTOR —RIGHT OF PURCHASER—IRREGULARITY IN SALE.

Though a sale of a minor's land, ordered by the court to be made by the tutor at public auction, be made by an attorney, acting for

the tutor, instead of the tutor, the adjudicatee, who pays part of the price, goes into possession of the land, sells an undivided half interest therein for cash, and then effects a partition with his vendee, cannot avail himself of that informality to resist payment of the balance of the price; the right to complain thereof being confined to the minor, who by claiming the proceeds when his disability ceases, or through his tutor during his disability, ratifies the sale and cures its defects.

6. INFANTS ⬗10 — MINORS — EMANCIPATION BY MARRIAGE.

A minor, emancipated by marriage, who has reached the age of 18 years, is relieved of all the disabilities of minority, as though he (or she) had attained the age of 21 years. Act No. 224 of 1908, pp. 341, 342.

7. VENDOR AND PURCHASER ⬗186—SALES— RATIFICATION OF SALE — EFFECT — COMPLAINT BY PURCHASER.

Where one acquires by purchase a title to real estate which is not attacked, or apparently open to attack, by any one save the former owner, and goes into possession of and deals with it as his own, and the former owner ratifies the sale whereby the title was acquired, the purchaser cannot set up a defect so ratified out of existence as an excuse for not paying a balance due on the price.

Appeal from First Judicial District Court, Parish of Caddo; John R. Land, Judge.

Action by Mrs. Indiana Roe, natural tutrix of Elizabeth and Carrie B. Hale, minors, and another, against W. T. Caldwell, in which, after judgment for plaintiffs and the dismissal of defendant's appeal because of the death of plaintiff tutrix before the judgment was signed, W. T. Roe, husband of Elizabeth Hale, as dative tutor, and his wife, were authorized to prosecute the suit. Case reargued, and judgment for defendant, and plaintiffs appeal. Reversed, and judgment rendered for plaintiffs, Elizabeth Hale, wife of W. T. Roe, and Carrie B. Hale, minor, represented by W. T. Roe, as dative tutor, against defendant.

W. A. Mabry and John B. Files, both of Shreveport, for appellants.

Joseph H. Levy, of Shreveport, for appellee.

## On Motion to Dismiss Appeal.

PROVOSTY, J. [1] The transcript filed by appellants contains only that part of the record not already contained in the transcript on a former appeal. Plaintiffs and appellants obtained an order from this court for the use of the transcript on the former appeal as part of the transcript on the present appeal. On the former appeal defendant was appellant, and paid for the transcript. He now moves to dismiss the present appeal, on the ground that the transcript filed by appellants is insufficient without the transcript of the former appeal, and that the latter transcript cannot be used by plaintiffs, because they have neither paid nor offered to pay for same.

An answer is that the transcripts of former appeals form part of the records of this court, and may be used in other appeals with permission of the court.

Motion overruled.

## On the Merits—Statement of the Case.

MONROE, C. J. This suit was instituted on behalf of the minors Elizabeth and Carrie B. Hale, by their mother, as natural tutrix, their stepfather, W. T. Roe, as co-tutor, and their undertutor, claiming $3,050, with interest, as the balance of price, due by defendant, for 40 acres of land, described as the S. E. ¼ of N. E. ¼ of section 29, township 22, range 15, in the parish of Caddo, which belonged to the minors and are alleged to have been adjudicated to defendant at a sale made by order of the district court, upon the recommendation of a family meeting.

Upon the first hearing of the case there was judgment for plaintiffs, from which defendant appealed, but the appeal was dismissed, upon the ground that, the plaintiff (tutrix) having died before the judgment was signed, there was no judgment from which an appeal would lie (138 La. 652, 70 South. 548); the fact being that the death

occurred before the judgment was rendered. A petition was then filed in the district court, representing that W. T. Roe (upon the recommendation of a family meeting) had been appointed dative tutor, and another petition alleging that he had married the minor, Elizabeth Hale, and, agreeably to the prayer therein contained, he, as dative tutor, and she, by virtue of her emancipation by marriage, were authorized to prosecute the suit, after which, and after a certain preliminary ruling, the case was reargued, and a judgment was rendered, from which, plaintiff prosecutes this present appeal. The preliminary ruling related to a supplemental answer which defendant filed, purporting to be an answer to plaintiff's petition to make parties, which answer the court, on plaintiff's motion, ordered to be stricken out.

The cause of action relied on is set forth in the original petition substantially as follows:

That on August 25, 1911, the court made an order convoking a family meeting to consider the question of the sale of 40 acres of land belonging to the minors; that the meeting recommended that the sale be made at not less than $50 an acre; that the proceedings were homologated, and that a commission issued authorizing the tutrix and cotutor to carry the recommendation into effect; that, after due advertisement, the land was sold at public auction, in front of the courthouse door in Shreveport, to the defendant, as the last and highest bidder, for $4,050; that plaintiffs thereupon executed an act purporting to convey the whole property, and to acknowledge receipt of the whole price, but that they were not present at the sale, and signed the act without reading it, under the impression, superinduced by the statements of defendant and his representatives, that the amount for which it called, and for which the sale had been made, was $1,000, which amount was paid by defendant to the cotutor; that they afterwards learned that the amount for which the property was adjudicated was $4,050; that the statements of defendant and his representatives were false and fraudulent, and that they thereupon demanded the balance of $3,050. They further allege that defendant went into possession of the entire property, rented it, and collected rents therefrom, and has sold part of the tract for $2,000, but has refused to pay said balance to petitioner. Wherefore they pray for citation, and for judgment for the same.

Defendant, in his original answer, alleges that plaintiff (W. T. Roe) called at his place of business (being a bank in Vivian of which he was cashier) and offered him 20 acres of the land in question, at $60 an acre, and that he declined the offer, but that, after several interviews, it was agreed that he should buy it at $50 an acre; that he was then under the impression that the land belonged to Roe, but that he subsequently learned that it belonged to the minors, and thereupon informed Roe that the whole tract would have to be offered and sold; that Roe refused to permit the whole tract to be "really and actually" offered or sold, save upon the condition that he (defendant) should first execute a counter letter agreeing to reconvey 20 acres to the minors, on demand, then bid in the entire tract and pay for 20 acres at the rate of $50 an acre, to all of which he agreed, and complied with his agreement; that the property was first offered and adjudicated (for $4,000) at Vivian, and, as Roe was anxious to leave the state, defendant paid him the $1,000 for the 20 acres before the completion of the proceedings; that it was then found that the sale at Vivian was null, and the land was again advertised to be sold in front of the courthouse in Shreveport, and on his "pretended" bid of $4,050 was "pretended" to be adjudicated to him at that price, when, in truth and in fact, he was purchasing 20

acres only at $50 an acre; and that the tutrix and cotutor executed a deal in conformity to said adjudication, well knowing that they had received the full price for 20 acres, and that the other 20 acres were to be returned to them. He denies that he, or any agents of his, practiced any fraud on plaintiff, or made any false representations to them, and alleges that he is ready to comply with the obligation contained in the counter letter, also denies that he has rented the land or collected rent for it, but he admits that he has sold part of it for $2,000. He prays that plaintiffs' demand be rejected and for all general and equitable relief.

Plaintiffs' petition to make parties, filed after the dismissal of the first appeal, was confined in its allegations to the facts pertinent to the question presented, and contained nothing bearing upon the merits of the case. The pleading filed by defendant, purporting to be an answer to that petition, contains the following, among other, allegations (stated in substance), to wit:

That W. A. Mabry (one of the counsel representing plaintiffs herein) is a party plaintiff herein, and should be so considered, he having a contract with the nominal plaintiffs, duly recorded, whereby he is to receive one-half of the amount recovered; that, at the first offering of the land, at Vivian, said Mabry and respondent were the only bidders; that Mabry bid $127 an acre, when, "for some reason," the pretended auctioneer postponed the sale until 2 p. m. of that day; that during the interim said Mabry and your respondent agreed that Mabry should not bid against respondent, and that respondent should bid in the property at $100 an acre, and let Mabry have one-half of it at that price; that, pursuant to said agreement, Mabry and respondent appeared at the reoffering, at 2 p. m., and the only bid then made was the "pretended bid" of respondent, of $100 an acre, upon which the property was

"pretended to be" adjudicated to him; that for "certain reasons" Mabry deemed the sale at Vivian to have been null, and the property was again offered at the courthouse (in Shreveport) on November 18, 1911, when, acting under said agreement, respondent again made a "pretended bid" of $4,050, upon which there was again a "pretended adjudication," and that he, on the same day, conveyed to Mabry an undivided half interest in said property for $2,000; that a commission to sell the property was issued to Indiana Roe, tutrix, and W. T. Roe, cotutor, but that they did not make the sale, and were not present when it was made—said sale having been made by J. Henry Shepherd, who was without authority so to do. The prayer of the original answer is then reiterated, but as an alternative, and in the event the court should hold that the agreement whereby defendant was to purchase an undivided half of the land and hold the other undivided half for the minors, as per counter letter, is not binding on the minors, defendant alleges that the pretended adjudication to him of November 18, 1911, was an absolute nullity, for the reasons that a tutor cannot purchase, or share in the profit of, his ward's property, as was attempted by Roe; that the agreement between Mabry and defendant "depressed the proceeds and bids on said property, to the injury of the minors"; that it (the adjudication) was made by J. Henry Shepherd, who was without authority in the premises; and he prays, in the alternative and in reconvention, that the adjudication be decreed null and that he recover the $1,000 paid by him.

On motion of plaintiffs' counsel the answer was stricken out, and thereafter they filed a plea of estoppel, on the ground (among others) that in his original answer defendant asserts title to one half the land, and thereby, in effect, asserts title to the other half, since he acquired the whole by virtue of the

same judicial proceedings, adjudication, and act of sale; and that he went into possession of the whole tract, sold an undivided half of it to Mabry, and then effected, with Mabry, a partition of the whole.

The proceedings leading to the adjudication of November 18, 1911, the adjudication itself, and the act of sale, pursuant thereto, are formal and regular, and upon the trial the following objections to the admission of evidence relating thereto were reserved, to wit:

"Counsel for plaintiff objects to what transpired prior to the sale, as it cannot affect the sale in any way, and any agreement, or arrangement, he [defendant] had with Mr. Roe would not bind the minors, unless same had been ratified, or passed upon, by the family meeting, or homologated by the judgment of a court of competent jurisdiction. We object, further, as going to change, vary, or contradict the written instrument. * * * The above objection, ruling, and bill of exception is made general, to apply to all such evidence. * * * Objected to by counsel for plaintiff, as it purports to be an agreement [referring to the counter letter] between Caldwell and Roe, individually, and not as tutor."

The counter letter reads as follows:

"October 11, 1915.

"I hereby acknowledge that W. T. Roe owns with me an undivided half interest in the southeast quarter of the northeast quarter, section 29, township 22, range 16, and agree to deliver to him one-half of such rental or royalties as received, or, in case of sale, price to be made by W. T. Roe, on his interest.

"[Signed]   W. T. Caldwell."

It will be observed that the land thus referred to is described as situated in section 29, township 22, range 16, while that here in dispute lies in section 29, township 22, range 15; that the quoted instrument purports to recognize W. T. Roe as an owner in indivision with defendant, but the minors (plaintiffs herein) are not mentioned, and (it may be here stated) that notwithstanding the recognition of Roe as an owner, in indivision with defendant, of the entire tract, it is shown, and is undisputed, that defendant has assumed to sell one-half the tract, in indivision, to Mabry, has (with Mabry) partitioned the entire tract between them, and now professes to hold, in severalty, the west half, subject to the demand of the minors, while Mabry is shown to hold the east half. It may further be stated that the sale to Mabry (or Mrs. Mabry) took place on the same day that the tutrix and cotutor executed the conveyance to defendant, and that the partition was effected on June 12, 1912. According to Roe's testimony, he called on defendant at the latter's place of business, at his written request, and without knowing what he wanted, and learned, only when he reached there, that he wished to buy 20 acres of the land in question. He testifies that he and defendant disagreed as to the price, but, after several interviews, fixed it at $50 an acre, for 20 acres, with the understanding that they were to hold the entire tract in indivision and share whatever profits might accrue from the handling of the property by defendant. Defendant's testimony is directed more specifically to a denial of an intention on his part to buy the entire tract. He testifies that Roe called on him at the bank and offered the property, but he does not deny that it was a written request from him that induced Roe to make the first call. He states in his answer and in his testimony, that he informed Roe that, as the land belonged to minors, it would have to go through the regular channels—be advertised, and sold at auction—and that he thought the whole tract would have to be sold; that Roe then employed an attorney (whom he names) to conduct the proceedings. But Roe testifies that it was defendant who employed the attorney, and he (Roe) who paid him for his services, and that, relying on the attorney, he failed to read the act when it was brought to him for signature, and did not know for several months that

the whole property had been adjudicated. (The attorney thus referred to, it is proper to say, was not the attorney who is now representing the defendant, and it was said in the course of the argument that he was not, at the time of the trial, within the state.) Defendant's supplemental answer having been stricken out, the allegations of fact therein contained were not developed by the evidence. In the course of the examination of defendant as a witness, he was interrogated by the judge and answered as follows:

"Q. Has this land enhanced or decreased in value? A. Decreased very materially. Q. How much is it worth to-day? A. Maybe $20 an acre; $15 or $20 an acre."

And, as the judgment appealed from declares plaintiffs to be the owners of the entire 40 acres in question, but further decrees that "no writ of possession issue under this judgment until plaintiffs shall pay to defendant the sum of $1,000, with legal interest from date of this judgment," rejects their demand, as contained in their petition, for the balance of price, and condemns them to pay the costs, it is evident that plaintiffs have gained a "Pyrrhic" victory, since $1,000 is $200 more than the present maximum value of the property that they get by paying that sum.

## Opinion.

[2] The alleged contract of employment (in this case) between the original plaintiffs and Mabry though said to have been annexed to the supplemental answer, was not filed with it, and, when offered in evidence, was excluded, on the ground that it was included in the order to strike out the answer, and the further ground that it was offered in aid of the effort to prove the allegations of the answer, make Mabry a party to the suit, and change the issues as presented by the original petition and original answer, to the allegations of which the testimony, adduced when the case was submitted, had been directed. We

are of opinion that the ruling of the court, declining to consider Mabry a party to the suit for the purposes of any judgment that could properly have been rendered in the case, as originally submitted, was correct. Act No. 124 of 1906, authorizing contracts of employment between client and attorney to be filed in a pending suit, was intended as a means of protection to the attorney with respect to the contingent fee for which such contracts provide, and not as a basis upon which a defendant can require a plaintiff to bring his attorney into a suit as a coplaintiff. It is true that this court has held that the interest which an attorney may have under such a contract is sufficient ground for the recusation of the judge, if the latter is related to him within the prescribed degrees (White v. McClanahan, 133 La. 396, 63 South. 61, 47 L. R. A. [N. S.] 448); but that is another matter, and that decision has no bearing on this case.

[3] We are also of opinion that the supplemental answer was properly stricken out, for the reasons, to wit:

The former appeal having been taken from a judgment which had been rendered and signed after the death of the plaintiff, tutrix, and at a time, therefore, when her wards, in whose behalf the suit was brought, were not properly represented, and having been dismissed on that account, the case was left in the district court, as submitted upon the evidence adduced, and, though it was within the discretion of the trial judge to have ordered it reopened, or assigned for reargument (as was done), the first essential was to substitute another person to represent the minors, in place of their deceased tutrix, and the petition filed in that behalf was confined to the accomplishment of that purpose. The supplemental answer was entirely irrelevant to that purpose and was an attempt to inject new issues which had not been suggested in the pleadings upon which the case had been submitted, and came too late. C. P. art.

419; United States v. Bank, 11 Rob. 418; Stilley v. Stilley, 20 La. Ann. 53; Castille v. Dumartrait, 5 Mart. (N. S.) 71; Case v. Watson, 22 La. Ann. 351; Henderson v. Meyers, 45 La. Ann. 795, 13 South. 191; Jameson v. Cullom, 110 La. 789, 34 South. 775; Duval v. Kellam, 1 Rob. 58; Dabbs v. Hemken, 3 Rob. 123; Lynch v. Crain, 2 La. Ann. 905; Kyle v. Van Bibber, 7 La. Ann. 576; Wright v. Railey, 13 La. Ann. 537; Cohn & Bruen v. Levy, 14 La. Ann. 355; In re Quaker Realty Co., 127 La. 214, 53 South. 526.

[4, 5] Considering the case, then, as originally presented: Defendant knew that he could not buy the property of the minors from Roe, for it was he who gave Roe that information, and told him that the sale would have to be brought about through judicial proceedings—at public auction—and that he thought it would be necessary to include the entire tract. How, then, could he have imagined that he could attend the sale ordered by the court, make the highest bid for the entire tract, thereby causing it to be adjudicated to him, sign a notarial act completing the transaction, take possession of the entire tract, sell an undivided half interest therein for cash, partition the tract between his vendee and himself, and thereafter by the production of a previously executed writing between Roe and himself, showing that the entire tract was to be held as owned by them in indivision, and oral testimony to a previous understanding between them to the effect that he was buying one-half of the land at one-half the price at which it was adjudicated to him, defeat the judicial sale, as made, and the purpose of the law requiring it to be made at public auction, and convert it into a private sale, from Roe to him, of one-half the land, at one-half the price per acre, as determined by such adjudication?

He says that he was to buy but one half the land for himself and was to take the title to the other half, in trust, for the minors, to be returned to them on demand; and he refers to the counter letter as sustaining that assertion. But he could not, under the law, have taken or held the property of the minors in trust, and his counter letter purports to show that he and Roe (not the minors) owned the entire tract in indivision, and that he was to deliver to Roe (not to or for the minors) one-half of such rentals or royalties as might be received therefrom, or, in case of a sale of the land, that Roe (not a family meeting convened on behalf of the minors) was to fix the price "on his interest." And the record shows that he sold an undivided half interest in the land to Mabry, that Roe had no voice in fixing the price "on his interest" therein, and received no part of the price, and that, by a partition between them, defendant and Mabry now appear upon the public records as the owners, in severalty, of the entire tract, the one of the east and the other of the west half, so that defendant, according to his own showing, has not even kept faith with Roe. Roe testifies that he made repeated demands on defendant to reconvey 20 acres of the land, which defendant says he agreed to reconvey "on demand," and that it was because he was unable to get any action in that direction that he brought this suit, after which defendant expressed his willingness to reconvey it, but that he (Roe) thought the offer came too late. Whether Roe wished to have the reconveyance made to him or to the minors does not appear, and, as the matter stands, the sale of November 18, 1911 (duly recorded), and the counter letter (unrecorded) would appear to have vested the title to the whole tract in Roe and defendant; but the conveyance by defendant to Mabry, and the partition between them, both duly recorded, would seem to leave something to be desired in Roe's title. As to the title of the minors, the last seen or heard of it was when, on November 18, 1911, it was conveyed to defendant, for a consideration of $4,050, of which de-

fendant admits that he has paid but $1,000. He now says (in the alternative) that the whole title is void, because the sale was not made by the tutrix, or cotutor, as ordered by the court, but by the attorney whom Roe employed (at his suggestion, be it observed) to conduct the required proceedings, which fact, it is said, appears from the evidence in the record (without reference to the allegations of the stricken out supplemental answer). The evidence in the record, as we find it, suggests the inference that the attempted sale at Vivian was conducted by the attorney thus referred to, and that the subsequent sale may have been made by him; but the fact is not definitely established. It is shown, that neither the tutrix nor the cotutor were present at the last sale, which is, perhaps, sufficient for the purposes of the argument that the sale is null, because not made by the person contemplated by law and by the order of the court. The answer to that argument, however, appears to be that it could be used only in the interest of the minors, and that, by claiming the proceeds in this suit, the minors ratify the sale, and cure the defect resulting from its having been made by some one other than the tutrix or cotutor.

The Civil Code (article 1791) declares that:

"The persons who have treated with a minor, person interdicted, or of insane mind, or with a married woman, cannot plead the nullity of the agreement, if it is sought to be enforced by the party, when the disability shall cease, or by those who legally administer the rights of such person during the disability."

In Melancon's Heirs v. Duhamel, 10 Mart. (O. S.) 225–283, it appeared that defendant was sued for the price of certain property which, as belonging to a minor heir, had been adjudicated at a sale made by order of the court, predicated upon the advice of a family meeting, and that he defended on the ground (among others) that the proceedings of the family meeting had been recorded in the French language, and were therefore null. Martin, J., as the organ of the court, in passing on that question, said:

"Admitting that the family meeting was required by law, and that its proceedings, if recorded in the French language, are a nullity, the case cannot be better for the defendant than if there had been no such meeting; no recommendation by any of the minor's relatives. The want of such a meeting or recommendation cannot be alleged to avoid a sale on the part of the vendee. The formalities which the law has established to protect minors, in the sale of their estates, are exclusively established for their benefit. If they are omitted, they alone can avail themselves of the omission and avoid the sale. But the vendee cannot refuse complying with his obligation, because some of the formalities which the law requires have not been attended to. Pothier, Vente, n. 14."

See, also, Spencer's Heirs v. Grimball, 6 Mart. (N. S.) 355; Rousseau v. Tête, 6 Rob. 471; Spencer, Tutrix, v. Conrad, Adm'r, 9 Rob. 79; Anderson's Adm'r v. Birdsall's Adm'x, 19 La. 441; Arnous, Tutor, v. Lesassier, 10 La. 592, 29 Am. Dec. 470.

[6, 7] It will be noted that C. C. art. 1791 (quoted supra), provides for cases in which the minor, after the cessation of his disability, seeks to enforce a contract entered into prior to such cessation, and also for cases where the legal representatives of the minor seeks such enforcement "during the disability."

The wife of the plaintiff is therefore within the intendment of the article, as a minor emancipated by marriage, who, by Act. No. 224 of 1908, is relieved of the disabilities of minority, and the minor, Carrie B. Hale, is within its intendment by reason of her being represented by her dative tutor.

Those objections being removed, defendant is in the attitude of having acquired the property of minors by a title which, if not perfect at the moment, was susceptible of being made perfect by their ratification, of having taken possession of the same and having sold one-half of it, and of having had his

title ratified by the former owners, and, with no attack, or threat of attack, from any other source, of now refusing to pay the balance of the price at which the property was adjudicated to him.

Without finding it necessary to pass upon plaintiff's plea of estoppel, we conclude that defendant's position is untenable, that the judgment appealed from is ultra petitionem and otherwise erroneous and should be annulled, and that plaintiff should have judgment as prayed for.

It is therefore adjudged and decreed that the judgment herein appealed from be annulled, and that there now be judgment in favor of the plaintiffs, Elizabeth Hale, wife of W. T. Roe, and the minor, Carrie B. Hale, herein represented by W. T. Roe as dative tutor, and against the defendant W. T. Caldwell, in the sum of $3,050, with interest thereon at the rate of 5 per cent. per annum from November 18, 1911, until paid, and all the costs of this suit.