FRUGÉ, Judge.
This is a suit for damages arising from personal injuries and property damage sustained in a collision which occurred on April 16, 1957, on U. S. Highway 84' in Concordia Parish. From a judgment in favor of plaintiff and against defendants, in solido, in the amount of $4,000 plus interest and costs, defendants prosecute this appeal. Plaintiff has appeared in this appeal, but failed to answer the appeal. The Travelers Insurance Company is the insurer of Coastal Contractors, Inc.
*255 The Department of Highways and defendant, Coastal Contractors, Inc., entered into a contract on July 16, 1956, State Project No. 22-07-17, Ferriday-Stacy Highway, State Route La.-U. S. 84, for the widening and resurfacing of said highway for a distance of 7.805 miles. The work order for said project was issued on July 19, 1956 and, according to the records of the Department of Highways, the work was commenced on August 15, 1956. Coastal engaged a Mr. Johnson to perform dirt-moving work which consisted of scraping and widening the shoulders of the highway and filling-in and widening the shoulders to the required width. This work was completed in the fall of 1956. For a period of approximately six months thereafter Coastal performed no other work due to heavy rains, but recommenced work sometime in the month of May, 1957. Under the terms of the contract[1] Coastal was to provide for and maintain local and through traffic during the contract; those parts open to traffic (including shoulders) were to be kept clear at all times, and not to be obstructed by equipment or material.[2] Old pavement was to be removed and disposed of by Coastal; the shoulders were to be excavated and reconstructed ; [3] and where the pavement was in “bad condition” Coastal was to break and seat the existing pavement and if broken during seating operations Coastal was to replace it; [4] in certain specified places they were to replace existing pavement.[5] Coastal was also required to erect barricades, lights and danger signals necessary for the protection of the .travelling public and the specifications for “signing” did not relieve Coastal of responsibility to the travelling public;[6] the signs and barricades were required when operations were suspended, *256 but only where the roadway was not safe to the travelling public; and “signing” was to be in accordance with the Louisiana Manual on Uniform Traffic Control Devices and were to be maintained by the contractor (Coastal) throughout the life of the contract.[7]
The highway at the point of collision was under construction by Coastal. In the westbound lane of traffic there was a break in the pavement, triangular in shape, with the apex near the center of the highway and the base at the edge of the highway, the former being approximately one foot wide and the latter two-three feet wide. The break was several inches deep and had large pieces of pavement in it. Alongside the break in the pavement the shoulder had been scraped and filled in. However, there was a trench parallel with and immediately adjacent to the edge of the highway, approximately 8-9 inches deep, which appeared to have been made by a large wheel (tire). The record discloses that at this point in the highway the machinery and vehicles used by Johnson continuously entered onto the highway. The record also discloses that the highway at this point rapidly deteriorated after Johnson did the “dirt work” and that it had not been repaired since the dirt work had been finished.
On the date of the accident, at 9:00 a. m., plaintiff was travelling in a westerly direction on Highway 84. As he approached the broken pavement in his lane of traffic an “army convoy” was approaching from the west. Plaintiff could not skirt the broken pavement by driving in the center of the road because the convoy was too close, nor could he drive off the highway and on to the shoulder because of the trench alongside his lane. Since he had traversed this spot several times in the past, in safety, and since he was travelling at approximately 20-30 miles per hour he attempted to do so once more. As he went over the broken pavement, his car skidded off the highway and into the trench alongside his *257 lane, that is, the right side of his car went into the trench. After skidding in the trench for approximately 20 feet his car whipped back onto the highway — the rear of his car hit an approaching car and then veered off into the ditch. Plaintiff was thrown from his car which resulted in the injuries and damages sued for. The record further discloses that the only signs in and around the construction work were at either end thereof, that is they were approximately eight miles apart. These two signs notified the public that construction was in progress; that the speed limit was 40-45 miles per hour; and the project number, cost, contractor, etc. There were no other markers or warning signs throughout the construction area. Plaintiff testified that he knew that this broken pavement existed, but that he had traversed same in safety several times before.
Plaintiff contends that the accident and resultant injuries were caused by defendant’s negligent performance of its contractual obligations with the Department of Highways. Defendant answered denying fault and that any negligence of Coastal was the proximate cause of the accident. Defendant filed a plea of contributory negligence by means of an amended answer submitted after the trial of the case, and without leave of court, but before rendition of judgment. In its original answer defendant did not plead contributory negligence, and for that reason plaintiff obj ected to any and all testimony tending to show that plaintiff was contributorily negligent. In Moore v. Davis, La.App., 196 So. 566, and cases therein cited, it was held that it was not an abuse of discretion for the trial judge to refuse to allow defendant to file an amended answer to plead contributory negligence after the evidence was taken since the plea is a special defense of which the plaintiff is entitled to know prior to trial.[8] The case of Calvert Fire Ins. Co. v. Lewis, La.App., 83 So.2d 139, discussed the case of Moore v. Davis, supra, and stated that where defendant had not specifically plead contributory negligence he could not, after judgment, amend to include the defense. Although writs were granted by the Supreme Court in that case, in its decision the Court found that the evidence was in hopeless conflict, and that the physical evidence did not support either theory, and therefore held that plaintiff had not made out its case. Since the case was decided on other grounds the question of whether or not the pleadings were sufficient to raise the defense of contributory negligence was not considered. See Calvert Fire Ins. Co. v. Lewis, 231 La. 859, 93 So.2d 194. For other decisions discussing this question see Lobell, for Use and Benefit of Hardware Mut. Cas. Co. v. Neal, La.App., 48 So.2d 797; Audubon Ins. Co. v. Lavallis, La.App., 95 So.2d 747; and M. Levy Co. of Shreveport v. Continental Cas. Co., La.App., 106 So.2d 766; and cases cited therein. Therefore, the question of contributory negligence is not before us.
The trial court found defendant liable, as defendant had not placed a barricade or signs at this spot, which he found to be a hazardous place, and that such failure was a breach of duty that was owed the motorist by the contractor (Coastal), and that this breach of duty was negligence and the proximate cause of the accident. In reaching this conclusion the trial judge relied on the case of McClendon v. T. L. James & Co., 5 Cir., 231 F.2d 802, 804, on which case the defendants also rely. The factual situation in that case is similar to those in this case, except for the features *258 that distinguish the two as pointed out below. T. L. James & Company, contractor, was engaged by the Department of Highways to widen and resurface an existing highway under a contract similar to the one at bar. Actual construction was being conducted on six miles of the contract area. There was a crack in the highway located in a section on which work had not been commenced, but which, was within the contract area. A collision between two vehicles was caused by the cracked cement, and suit followed. There the evidence was to the effect that the defect was in no way brought about by the contractor, and had existed for a considerable length of time, and had not been altered by the contractor; and the defective pavement was not in the section which had been worked by the contractor. The court, in the McClendon- case, stated that:
“That being so, gauged by the standards of reasonable care apart from the contract, what .obligations to the traveling public were imposed? None, we .think, either to warn or repair. Of course, in the performance of its contract, the Contractor must carry on the work with reasonable prudence and members of the traveling public are obvious beneficiaries of that requirement. Failure to heed that standard imposes liability on a Contractor where what it has done, or not done, has had instrumental effect in creating the condition out of which the danger comes. (Citations omitted.)
“But here the Contractor has done nothing. Prudence, as such, does not tell it to do something. If it had to mark the defect, warn against it, temporarily repair it or build up the shoulder for a suitable by-pass, the duty came alone from the contract. But nonperformance (non-feasance) of such a contract duty owing by the agent to his principal under a contract does not give rise to tort liability against that agent, and, of course, the agent has no contract liability to a third party not in privity. * * * ‘But * * * The true question always is, has the defendant committed a breach of duty apart from the contract. If he has only committed a breach of the contract, he is liable only to those with whom he has contracted; but, if he has committed a breach of duty, he is not protected by setting up a contract in respect to the same matter with another. * * *
******
“ * * * as the work was being done with the traffic flow being left open, the Contractor should exercise due care, by suitable warning devices, temporary or improvised by-passes or the like, to afford reasonably safe passage to the traveling public. Whenever, then, the contractor’s work, completed or in progress, gave rise to a likely hazard not otherwise existing, it would impose 'the burden of these contract obligations on the Contractor. * * * Conversely, with respect to portions not yet worked on, the Contractor had no contractual duty of maintenance, repair, or warning. As to any such portions, its duties were those, and only those, imposed • generally by law.” (Emphasis added.)
In the case at bar, the broken pavement was located in that area which had been and was in the progress of being worked, whereas in the McClendon case the broken pavement was in an area which had not been worked. Here the evidence is to the effect that the defects were brought about by the contractor, and they had come into existence during and after the dirt work was commenced which had been performed for the contractor. The fact that Coastal had not performed work for six months in the area does not relieve it of its responsibilities under the contract, that is to provide for traffic; to keep those parts open to traffic clear; removal of old pavement; to barricade and place signs where necessary, etc. Cf. footnotes.
*259 We find that the broken pavement, combined with the trench alongside the pavement at that point, and the fact that the break deteriorated so rapidly, was such a condition as to create a hazard to the travelling public. The fact that plaintiff knew that the break was there is of no moment in view of the fact that the break deteriorated rapidly, and the fact that plaintiff travelled the highway once a week was not sufficient notice to him that the area was impassible. As stated in the McClen-don case, supra, whenever the contractor’s work, completed or in progress, created or gave rise to a hazard which would not have otherwise existed, then the burden of the contractual obligations would be imposed on the contractor. Also it is to be noted that the Court stated that in the performance of its contract, the contractor must carry on the work with reasonable prudence and members of the travelling public are the beneficiaries of that requirement. And a failure to heed that standard imposes liability on the contractor. Under the contract Coastal had a duty to sign and barricade danger spots. For its failure to do so, even though it is a breach of contract, it cannot be relieved of liability. This was such a breach as to be a breach of duty to the travelling public. Under these circumstances it cannot be doubted that Coastal should have placed a barricade at this spot or to have repaired the broken pavement. Had it not been for the broken pavement and trench located in such close proximity this accident would not have occurred. Therefore, we find, as did the trial judge, that it was negligence to allow these conditions, and to allow them to remain unguarded, and that that negligence was the sole proximate cause of the accident under the circumstances.
Plaintiff has neither appealed nor answered the appeal. Therefore, we are unable to interfere with the judgment below as far as it is concerned with quantum of damages.
For the foregoing reasons the judgment •appealed from is affirmed. Defendant-appellant to pay all costs.
Affirmed.
HOOD, J., dissents with written reasons.

. Footnotes two through seven are the pertinent parts of the contract between Coastal Contractors, Inc. and the Department of Highways.

. “Maintenance of Traffic: The contractor will be required to provide for and maintain through and local traffic at all times during the construction of this project. * * *
“Intersections and connections with existing travelled roads, * * * including shoulder, which is kept open to traffic, shall be kept clear at all times and no obstructions to traffic will be permitted by reason of storage of material or equipment at these locations.”

. “Removing Old Pavement: This item shall meet applicable requirements of
“Pavement removed under this item at the location shown on the plans shall be replaced by pavement constructed under Item S-3.
“Excavating Existing Shoulders : Work under this item shall consist of excavating the existing shoulders for widening the existing concrete pavement end of reconstructing the shoulders subsequent to the completion of widening operations ijs * * >>

. “Breaking and Seating Existing Pavement: This item consists of breaking and seating the existing pavement at locations where the pavement is in bad condition caused by pumping, all as specified and directed by the engineer. * * * * *
“In the event that pavement, during breaking operations, is damaged through negligence or carelessness on the part of the contractor to such extent that it cannot be properly seated, such pavement shall be replaced by the contractor at his own expense * *

. “Replacing Existing Roadway Pavement: This item shall consist of furnishing all materials, labor, tools, equipment and incidentals for and the constructing of new roadway pavement (base) at the location indicated on the plans and as provided by this special provision.”

. Specifications, Section 29 (New), Signs and Barricades.
“29.01 Description: This item shall consist of furnishing and installing all necessary barricades, suitable and sufficient lights, danger signals, and signs, and complying with all other requirements necessary for the protection of the public, as provided in Article 7.08, Division I of the Standard Specifications. It shall also include furnishing and placing project signs and such other signs as may be required by the plans.
“Signs and barricades, and the arrangements thereof, as shown on the plans, are minimum requirements of the Department. Special conditions shall be treated as such and appropriate *256 signs shall he furnished as directed by the enginer. * * * In no wise shall these specifications he construed as relieving the contractor of any of his responsibilities for the safety of the travelling public, or for any liability in connection therewith.” (Emphasis added.)

. 29.03 General: “Signs, barricades, etc., ■will be required during such time as the contractor’s work is in progress on the portion, or portions, of the work covered by the work order * * * or when his operations are suspended but the traveled portion of the road is not in such condition as to be safe for the traveling public. During such times that barricades are not in place, appropriate regulatory signs shall be erected and maintained by the contractor. This shall in no way be interpreted to mean that the contractor is relieved of any of his responsibility for the■ safety of the public * * * ”
“In the event a partial work order is issued, the contractor shall immediately begin the erection of signs and barricades over the affected portion, or portions, of the project to the extent necessary to comply with the requirements herein set forth, or herein referred' to. When the full work order is issued, barricades shall be erected at the beginning and end of the project, and signing throughout the remainder of the project shall be completed.
“In the event a full work order is issued, the contractor shall immediately begin the erection of appropriate signs and barricades over the entire project.
“In any event, the erections of signs and bai~ricades shall be completed within 10 days after issuance of the work order, * * * over the entire project, * * *

“In no event shall construction work under this contract begin until signs and barricades, as provided above, have been erected and approved by the engineer.

“Signing, as required by the contract, shall be in accordance with the Louisiana Blanual on Uniform Traffic Control Devices, and shall remain in place and shall be maintained by the contractor and supplemented by additional signs as may be required by the engineer throughout the life of the contract.
“Signs placed by the contractor shall not be removed until the contract is finally completed * * (Emphasis supplied.)

. Furthermore, in Roe v. Caldwell, 145 La. 853, 83 So. 43, that court stated in its syllabus that:
“A supplemental answer injecting new issues comes too late, and is properly stricken out, when filed after the taking of testimony is closed and the case is submitted; and that is equally true, though it may have become necessary, after the submission, in consequence of the death of the orginal plaintiff, to make a new party plaintiff, and though the case has been assigned for reargument.”
See Code of Practice, Articles 419, 420 and annotations thereunder.