Anson O'Brien and Barbara O'Brien, Plaintiffs-Appellees, v. Margaret S. Musfeldt, Defendant-Appellee, and Central Engineering Company, Defendant-Appellant.

Gen. No. 10,468.

Opinion filed September 14, 1951. Rehearing denied December 13, 1951. Released for publication December 13, 1951.

WOOD, MCNEAL & WARNER, of Moline, for appellant.

SOLLO, GRAHAM & CALIFF of Moline, for certain appellee.

VIRGIL BOZEMAN, of Moline, for certain other appellees; VIRGIL BOZEMAN, and ROBERT G. GRAHAM, both of Moline, of counsel.

Mr. Presiding Justice Wolfe delivered the opinion of the court.

On October 21, 1948, Anson O'Brien and his daughter, Barbara, were riding on U. S. Route 67 and Illinois Route 92 in an automobile owned by Anson. They were driving in a southerly direction at a point on said highway which runs north and south between Fourth and Fifth streets in the village limits of Milan, Illinois, and were attempting to pass a truck on said highway. At the same time Margaret S. Musfeldt was driving her car in a northerly direction on said highway, when the two cars collided, and the occupants of both cars were injured.

Anson O'Brien filed a suit in the circuit court of Rock Island county, charging Margaret S. Musfeldt with negligence in operating her car which caused his injury. Barbara O'Brien filed a like suit. Margaret S. Musfeldt filed a suit against Anson O'Brien claiming that it was through his negligence that she was injured.

At the same time Anson O'Brien filed a suit against the Central Engineering Company, a corporation who had a contract with the State of Illinois for improving said highway, and it is claimed through its negligence that he was injured. Barbara O'Brien filed a like suit and Margaret S. Musfeldt filed a like suit. The case was submitted to a jury who found the issues in favor of the plaintiffs. At the conclusion of plaintiffs' evidence appropriate motions were made by the defendant for a directed verdict, also at the conclusion of all the evidence. These motions were denied, and the case submitted to a jury, that found the issues in favor of the plaintiffs and assessed Anson O'Brien's damages at $6,000, Barbara O'Brien's damages at $4,000, and Margaret S. Musfeldt's damages at $25,000. At the conclusion of plaintiffs' evidence Anson O'Brien and Barbara O'Brien dismissed their

suit as to Margaret S. Musfeldt and Margaret S. Musfeldt dismissed her suit as against Anson O'Brien, so the case went to trial by the three plaintiffs against the Central Engineering Company.

Count four of Anson O'Brien's complaint is against the Central Engineering Company alone and is as follows: "Anson O'Brien, complaining of Central Engineering Company, alleges: "1. The defendant, Central Engineering Company, is an Iowa corporation, which is duly qualified and authorized to do business in the State of Illinois.

"2. On the 30th day of June, 1947, said defendant, Central Engineering Company, by its officers and agents, entered into a contract with the State of Illinois acting by and through the Department of Public Works and Buildings of said State, to build, construct or repair certain highways in the State of Illinois known as United States Route 67 and Illinois Route 92, and on October 21, 1948, a certain portion of said highway so being constructed or repaired by said defendant under the aforesaid contract and lying between a point one mile south of the junction of United States Route 67 and Illinois Route 92 east in the village of Milan, Illinois, and a point about one quarter of a mile south of the junction of United States Route 67 and Illinois Route 92 west, was still incomplete and under construction by said defendant under the aforesaid contract.

"3. Under the terms of said contract the defendant, Central Engineering Company, a corporation, undertook to furnish certain lights, barricades and warning signs in the language of the contract as follows:

'Barricades, Warning Signs and Lights. In order to insure the safety of traffic, special attention shall be paid to the erection and maintenance of barricades and warning signs, all of which shall be well lighted

16

at night. The Department will furnish and erect the proper warning signs in advance of each end of the job. The contractor shall furnish and erect the necessary barricades, together with the signs required on the barricades, and shall also furnish all lights required on all the signs and barricades, including the lights on the advance warning signs erected by the Department. The contractor shall maintain the signs, barricades and lights in a satisfactory condition at all times. It is understood and agreed that the cost of all work and arrangements outlined above has been included in the bid, and no extra compensation will be allowed.

and said contract further provides that, ''The following special provisions supplement the standard specifications for road and bridge construction,'' adopted July 1, 1942, which govern the construction of S. B. I. Route No. 3 . . . and in case of conflict with any part or parts of said specifications the said special provisions shall take precedence and shall govern.' The standard specifications for road and bridge construction provide as follows:

''Barricades and Warning Signs. When any section of road is closed to traffic the contractor shall provide, erect and maintain barricades, red flags and red lights at each end of the closed section and at all intersecting roads. He shall also erect and maintain at the same points the warning and other signs provided by the Department.

''When the special provisions provide that traffic is to be permitted to use the road during its construction, the contractor shall protect the work and provide for safe and convenient public travel by providing, erecting and maintaining such barricades, red flags and red lights as are necessary, and by erecting and

maintaining the warning and other signs provided by the Department.

"Whenever any section of road is opened to traffic before all work on that section is completed, or while construction operations are being conducted thereon, the contractor shall provide, erect and maintain at each end of the section and at intermediate points where traffic may enter said section of road, the necessary barricades, 'Travel At Your Own Risk' signs, red lights and flags, and also shall erect and maintain at the same points the warning and other signs provided by the Department.

"4. On the 21st day of October, 1948 the said highway was still under construction from a point at approximately the south Village limits of the Village of Milan, Illinois, to a point about one quarter of a mile south of the junction of United States Route 67 and Illinois Route 92 west, and the defendant, Central Engineering Company, a corporation, was engaged in constructing or repairing the proposed four lane highway between these points under said contract.

"5. Between said points the two easterly lanes of said four lane highway were barricaded and barred to vehicular traffic and it was necessary for traffic proceeding north and south between said points to use the west lanes of traffic, and at the north end of said point of construction the said highway broadened into full four lane paved highway and extended north through said Village of Milan.

"6. Not regarding its duty under said contract and its duties to this plaintiff as a traveler on said highway, the defendant, Central Engineering Company, a corporation, neglected to erect proper signs, lights, barricades and other warnings between the points of beginning and ending of said construction work on said highway to indicate to motorists proceeding in a northerly direction that the area of highway under

18

construction terminated and that said highway broadened into the use of the full four paved lanes at that point; because of the failure of the defendant, Central Engineering Company, to so erect such lights, signs and barricades to warn northbound traffic that the highway broadened into the full four paved lanes of said highway and that traffic should at that point proceed on the right half of said highway, the said defendant caused said highway at this point to become a veritable trap.

"7. On the 21st day of October, 1948 at about 6:25 o'clock on the evening of said day the plaintiff, Anson O'Brien, was the owner of a certain automobile which he was then and there driving in a southerly direction along and upon the said highway, being United States Route 67 and Illinois Route 92, at a point north of the north end of the said area under construction as aforesaid and within the limits of the Village of Milan, Illinois, at a point between 4th and 5th Streets in said village, which said streets intersect said highway and run in easterly and westerly directions; at this point and north of this point said highway was a four lane paved highway.

"8. Then and there the defendant, Margaret S. Musfeldt, was in possession of and operating a certain automobile in a northerly direction along and upon said highway; the night at that said time was dark and the road under construction was improperly lighted or barricaded; prior to reaching the north end of said highway under construction, said defendant, Margaret S. Musfeldt, had been driving on the left or west portion of said highway following the routing of traffic and was not warned or notified by any signs or signals that she had reached the north end of the portion of said highway under construction as aforesaid or that the highway at that point broadened into a paved four lane highway, and being so confused, or

19

led by this fault and negligent omission of said defendant, Central Engineering Company, a corporation, she continued to drive her said automobile on the left or west side of said highway, which, after reaching the said construction work was the left or wrong side of said highway; as a result thereof her said automobile was caused to collide with the automobile being driven by the plaintiff, Anson O'Brien.

"9. As a direct and proximate result of the failure of the defendant, Central Engineering Company, a corporation, to warn the defendant, Margaret S. Musfeldt, by proper signs, barricades, or signals or lights that she had reached the termination of the highway under construction and that said highway at that point broadened into a four lane paved highway, and because she was caused to be confused and misled by the negligent conduct of said defendant, Central Engineering Company, a corporation, the automobile which she was driving as aforesaid was caused to and did run into and collide with the automobile being driven by the plaintiff, Anson O'Brien, as aforesaid; by reason and as a direct result thereof the plaintiff, Anson O'Brien, sustained the same personal injuries and damages alleged in paragraph 5, Count I.''

Barbara O'Brien and Margaret S. Musfeldt filed similar complaints against the Central Engineering Company. Motions were made by the defendant to strike the complaint as not stating a cause of action. Additional counts were filed, but in substance were the same as alleged in Anson O'Brien's count four. The defendant filed its answer and admitted having a contract to improve the road in question, but denied that they owed any duty to any of the plaintiffs, and denied that the plaintiffs were injured because of any negligence on the part of the defendant. They deny that any of the plaintiffs were in the exercise of due care and caution for their own safety, but allege that

20

the accident occurred on account of the negligence of Anson O'Brien and Margaret S. Musfeldt by not operating their automobiles in a careful and prudent manner. They deny that the part of the road where the accident occurred was in the care and possession of the defendant, but allege that that part of the road had been completed, and accepted by the State of Illinois.

In paragraph 5 of their answer they claim: "All of said defendant's acts in connection with the improvement of said section of said highway were in strict conformity with the provisions of said contract and were governmental acts of the State of Illinois, for which neither the State of Illinois nor the defendant can be held liable, and for which the defendant is entitled to the same exemption from liability which exists in favor of the State of Illinois." The defendant also alleged that it complied strictly with the provision of the contract and did maintain all signs, barricades and lights required of it by the provisions of the contract; that they did this in a satisfactory condition at all times, and did provide, erect and maintain barricades, red flags and red lights at each end of the closed section of the highway, and at all intersecting roads and did erect and maintain at the same points, "Travel at your own risk sign," and the warning and other signs provided by the contract.

Later, the court granted leave to the plaintiffs to file additional counts: count no. seven of Anson O'Brien, count no. eight of Barbara O'Brien and count no. two of Margaret S. Musfeldt. These counts explain more in detail the cause of the accident in question, and the duty that the Engineering Company owed to them to avoid their injury. The defendant made a motion to strike these additional counts, but was overruled by the court. The defendant then filed its answer to these complaints, denying all liability under

the contract, and denied owing any duty to the plaintiffs under the contract. All three plaintiffs filed a reply to the affirmative defenses of the defendant.

Before the case was submitted for trial, the defendant filed a motion for separate trials claiming that it would be prejudiced by trying the three cases at one time, because the issues were so numerous and complicated that it would be difficult for the jury to understand the evidence as to each separate claim, and therefore the defendant would be unduly prejudiced. The appellant concedes that in the matter of granting a separate trial, it is within the discretion of the trial court and cannot be complained of, unless there has been an abuse of that discretion. In this particular case it was one accident and the same evidence would necessarily have to be introduced in each particular case if the court had granted a severance, so under the circumstances as disclosed in this case we are of the opinion that the court did not err in refusing to grant separate trials of each case.

It is seriously insisted by the defendant that the court erred in not sustaining their motion to dismiss the complaints, and that the defendant's contract was one with the State of Illinois, and under that contract the plaintiffs had no right in which they could sue either the State or the defendant for any violation of the terms of the contract. The complaint set forth certain paragraphs of the contract in which the defendant is compelled to erect certain warning signs to protect the public generally. In answer they claim that they did erect such signs. This presented a question of fact as to whether such signs were properly erected, or whether they failed in their duty to erect the appropriate signs for the protection of the public, and by reason of their failure, the plaintiffs were injured.

22

A case very similar to this is *Hallett v. Wm. Eisenberg & Sons,* 116 N. J. L. 201, a New Jersey case, reported in 183 Atlantic 143. The court, after stating the facts in the case, finally concludes with this language: "In these circumstances, a finding of negligence in the rerouting of traffic through the construction area was justifiable. It was open to the jury to find that appellant failed in its duty to provide adequate warning, lighting, and direction to guide motorists safely through the open easterly portion of the highway; and that, in consequence of deficient lighting, the southerly barrier blended into the darkness, and thus came the illusion that it stretched across the entire westerly half of the highway, and across the easterly concrete lane to the shoulder of the road. . . .

"It is urged that, inasmuch as 'there was plenty of room for the car approaching in the opposite direction to pass by on the dirt shoulder,' the collision was the proximate result of Kasper's sole negligence, and not of any failure of duty on appellant's part. The difficulty with this contention is that Kasper, in passing the barrier on the right, was observing the direction of the signpost erected by appellant. The hazard was one created by the appellant.

"Nor is it of any consequence, in respect of this issue, that appellant was engaged in work incidental to the separation of the grades of these intersecting highways, under a grant of authority by the state highway commission. It was nevertheless incumbent upon it to exercise the degree of care commensurate with the risk of danger; it was not privileged to create or maintain a nuisance in the highway. (citing cases.)

"And, for like considerations, it was the function of the jury to assay the conduct of the respondent. The claim that it conclusively appears that he was guilty

of negligence which proximately contributed to the collision is so obviously untenable as to require no discussion.'' We think that the defendant did owe a duty to the plaintiffs under their contract to build this road and to erect certain signs for the protection of the public. Each of the complaints states a good cause of action and the court did not err in overruling the motion to dismiss the same.

██ It is insisted by the appellant that any duty that it may have owed to the public generally under the contract, had expired because the pavement in question where the accident occurred, had been fully completed and accepted by the State of Illinois. This, the appellees denied, and this question was fairly presented to the jury. They found against the appellant in this matter, and from an examination of the evidence as disclosed by the abstract, we are satisfied that their conclusion is correct.

The contract in question contains this clause: ''The work under construction shall not be open to traffic until authorized by the engineer in writing. Whenever in the opinion of the engineer all of the work or any portion thereof is in an acceptable condition for travel, it shall be open to traffic as may be directed, but such opening shall not be construed as an acceptance of the roadway or any part of it or as a waiver of any provision of these specifications and contract.'' The evidence disclosed that part of this work had been accepted and open to the public, but there was other work to be done, perhaps not on the concrete work itself, but the shoulders and finishing were not completed, so under the contract the defendant had not fully completed its work and was still under the control of the construction company.

██ This contract, as alleged in the complaint, called for the construction of a four-lane highway. On the day of the accident the southbound traffic was

24

using the west two lanes of traffic, and a little way farther south Mrs. Musfeldt drove onto the road from a side street and was using the right-hand lane of this two-way highway coming north and she claims that she did not see any sign that directed her to go over on the east side, or the four-way highway. The road was being constructed with islands between the two lanes of traffic. The plaintiffs claim that the defendant violated the terms of the contract by not posting proper signs so that a person in the exercise of ordinary care for his own safety, would see the signs and turn over into the four-lane highway. This issue was presented to the jury and they found in favor of the plaintiffs, and that the defendant had not erected appropriate signs to warn the people to turn over into the four-lane traffic. We think there is sufficient evidence in the record to support this finding of the jury.

The appellant states: ''When a negligent act or omission does nothing more than furnish a condition, and that condition causes an injury by the subsequent independent act of a third person, the two are not concurrent and the condition is not the approximate cause of the injury.'' The appellee does not dispute that this is the ordinary rule, but claims that under the facts and circumstances in the present case the rule does not apply. This court in the case of *Johnston v. City of East Moline,* reported in 338 Ill. App. 220, had the same question presented to us. While the facts are not the same, the rule of law is. In that case we quoted from the Supreme Court case of *Neering v. Illinois Cent. R. Co.,* 383 Ill. 366 and we there say: ''What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such

a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act. (*Illinois Central Railroad Co. v. Oswald,* 338 Ill. 270; *Hartnett v. Boston Store of Chicago,* 265 Ill. 331.) An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury. (*Illinois Central Railroad Co. v. Oswald,* 338 Ill. 270; *Pullman Palace Car Co. v. Laack,* 143 Ill. 242.) The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. (*Wintersteen v. National Cooperage and Woodenware Co.,* 361 Ill. 95; *Sycamore Preserve Works v. Chicago and Northwestern Railroad Co.,* 366 Ill. 11.) What is the proximate cause of an injury is ordinarily a question of fact to be determined by a jury from a consideration of all the evidence. *Phillabaum v. Lake Erie and Western Railroad,* 315 Ill. 131.'' This issue was presented to the jury for their determination. They found it in favor of the plaintiffs and the evidence amply supports their finding.

██ ██ The appellant claims that it was unjustly prejudiced because the trial court admitted improper evidence against it, and especially that the court improperly admitted in evidence the contract in question, when the plaintiffs did not attempt to plead all of its provisions. The additional abstract shows that part of this contract was admitted in evidence without the objection of the defendant. When Mr. Bozeman, the attorney for Margaret S. Musfeldt, asked the court's permission to read part of the contract to the jury, Mr. McNeal, one of the attorneys for the defendant,

stated: "We wish to object to counsel reading the paragraph he refers to on Page 7 without reading the entire contract." Under the record in this case we think the court did not err in admitting this contract in evidence. There is another reason why the defendant is not in a position to urge this error. The rules of the Supreme Court and this court provide that the abstract must contain every point relied upon for reversal. The appellant's abstract does not contain any part of the contract in question.

■ Complaint is made as to the examination in chief of the witness, Martin. We find no merit in this contention, because there were other witnesses that testified to the same things as Martin, and the jury could not be unfavorably influenced against the defendant by anything the witness, Martin, stated.

■ On direct examination, one of plaintiffs' witnesses, Mr. Lindsey, testified that there were no signs on the island dividing the traffic, and especially that he did not recall any speed sign ahead on the island on October 22, 1948. This evidence was given in plaintiffs' case in chief. He was recalled as a rebuttal witness and defendant objected that it was improper to call him at this time. The witness was allowed to testify in regard to a conversation that he had had with Daniel Branigan, the engineer, in charge of the work. He says he complained to Mr. Branigan that the speed sign should be cut down from thirty miles to twenty miles an hour at the school crossings on this road. Then he stated that Mr. Branigan said: "To hell with the school children, they have to watch out for themselves. Every time we build a highway there is always confusion at the highway crossing about the school kids." Mr. McNeal made a motion that this statement be stricken because it is not rebuttal evidence. This was the only objection that was made to this testimony at the time it was introduced. Later

27

the defendant made a motion to withdraw a juror and declare a mistrial because of Lindsey's remark about what Branigan said, was prejudicial to the rights of the defendant. This motion was denied, and the court instructed the jury to disregard anything that Lindsey had said in regard to the statement, ''To hell with the school children,'' etc. No doubt this evidence was improper and the court realized that, when he sustained defendant's motion to instruct the jury to disregard this testimony, but as before stated, at the time this evidence was given, there was no objection that the testimony was prejudicial to the defendant, but only that it was not proper rebuttal. The matter of rebuttal evidence is largely in the discretion of the trial court, and whether it was, or was not proper rebuttal, it was not such evidence as would justify a court of review in setting aside the verdict in this case. The question of whether it was prejudicial to the defendant was not raised until the next day after the evidence was given. We think the court properly instructed the jury to disregard the same.

 On behalf of the plaintiff, Anson O'Brien, the court gave the following instruction: ''The Court instructs the jury if you believe from the evidence in this case that Anson O'Brien, immediately prior to the accident in question, and without fault on his part, was placed in a sudden emergency with the peril of a collision imminent, as the result of Margaret Musfeldt's car suddenly appearing in the same lane of traffic on which he was proceeding, then you are instructed under such state of proof, if such is the proof, that Anson O'Brien would not be required to use the same degree of self-possession, coolness and judgment as when there is no imminent peril.'' A like instruction was given on behalf of the plaintiff, Margaret Musfeldt. The objection that defendant has to this

28

instruction is that there is no evidence on which to base it. Anson O'Brien had traveled this same road frequently, and knew that both lanes of traffic were used for southbound traffic, and he when overtaking a truck and in passing the same, had no knowledge that Margaret S. Musfeldt would be driving on the wrong side of this pavement, as he pulled out to pass the truck. Margaret S. Musfeldt testified that there was no warning sign to direct her .over on the four-lane traffic, and she thought that she was in the proper lane going north, and had no warning of the O'Brien car coming out from behind the truck, until just a moment before the collision. Under the circumstances in this case we think the court did not err in giving this instruction. *Rzeszewski v. Barth,* 324 Ill. App. 345 and *Anderson v. Samuelson,* 342 Ill. App. 516.

What we have said in regard to the plaintiffs' rights to sue the defendant under the contract they had with the State of Illinois, applies to the objection to instructions 8, 9, 10 and 11. Plaintiffs' instruction No. 23, perhaps should not have been given, as it does not apply to the facts and circumstances in this case, but we do not see how the defendant could possibly be injured, or prejudiced by the court's giving this instruction. We think that the court did not err in giving instructions No. 24, 25 and 27.

It is stated in the case of *People v. Quevereaux,* 407 Ill. at Page 176: "While the record is not entirely free from error, it is not the policy of this Court to reverse a judgment of conviction unless it appears that real justice has been denied or that the verdict of the jury and the judgment of the court may have resulted from such error."

It is our conclusion that while there is some error in this case it is not such as would justify this court in reversing it. In a hotly contested case such

29

as this, which lasted about ten days, it would be practically impossible not to find some error. We therefore hold that the defendant was not prejudiced by any error in this record, and the proof is not so unsatisfactory as to justify us in reversing the case.

The judgment of the circuit court is accordingly affirmed.

*Judgment affirmed.*