In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 19-2414 & 19-2395

THOMAS ROBERTS and DIANE ROBERTS,

*Plaintiffs,*

*v.*

ALEXANDRIA TRANSPORTATION, INC., *et al.,*

*Defendants.*

_____

ALEXANDRIA TRANSPORTATION, INC., *et al.,*
        *Third-Party Plaintiffs-Appellants, Cross-Appellees,*

*v.*

SAFETY INTERNATIONAL, LLC,
        *Third-Party Defendant-Appellee, Cross-Appellant.*

_____

Appeals from the United States District Court for the
Southern District of Illinois
No. 3:14-cv-1063 — **J. Phil Gilbert**, *Judge.*

_____

ARGUED MAY 19, 2020 — DECIDED AUGUST 5, 2020

_____

Before EASTERBROOK, BRENNAN, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge*. At a road construction site in Madison County, Illinois, a flagger abruptly turned his sign from "SLOW" to "STOP." Thomas Roberts slammed on his breaks, and Alexandre Solomakha rear-ended him, causing Roberts serious injury and prompting a lawsuit against Solomakha and transportation companies Alexandria Transportation, Inc. and Alex Express, LLC.[1] The Alex Parties filed a third-party complaint for contribution against the general contractor for the construction site, Edwards-Kamalduski ("E-K"), and a subcontractor, Safety International, LLC ("Safety"). E-K settled with the plaintiffs, and the district court dismissed it from the Alex Parties' contribution action with prejudice. The Alex Parties later settled with the plaintiffs, as well.

With E-K out of the picture, though, the Alex Parties' case becomes more complicated. The Alex Parties contend that the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100 (the "Contribution Act"), allows for the court to redistribute E-K's share of liability as determined by a jury between the Alex Parties and Safety, but Safety disagrees. The controversy surrounds the meaning of a particular phrase in the statute— "unless the obligation of one or more of the joint tortfeasors is uncollectable." We can find no decision of an Illinois court that has addressed whether the "obligation" of a settling party is "uncollectable" pursuant to 740 ILCS 100/3. Rather than decide this issue in the first instance, we respectfully request that the Illinois Supreme Court do so.

---

[1] The parties have referred to Solomakha, Alexandria Transportation, Inc., and Alex Express, LLC collectively throughout this litigation as the "Alex Parties." We continue to do so here.

## I. Background

Thomas Roberts was driving a truck westbound through a construction zone on Interstate 70 in Madison County, Illinois, when a work zone flagger suddenly turned a "SLOW" sign to "STOP." When Roberts abruptly slammed on his brakes, Solomakha's tractor rear-ended Roberts's truck. Roberts' injuries resulted in medical bills totaling over $500,000.

Plaintiffs Thomas and Diane Roberts filed a complaint against the Alex Parties for negligence under Illinois common law in the United States District Court for the Southern District of Illinois, which sat in diversity jurisdiction. The Alex Parties, in turn, filed a third-party complaint for contribution against E-K, the general contractor for the road construction project, and Safety, the subcontractor E-K retained through an oral contract to manage (some disputed aspect of) the construction site's worker safety program. The plaintiffs settled with E-K for $50,000, and E-K filed a motion for a good faith finding pursuant to the Contribution Act. The district court granted this motion and dismissed E-K with prejudice. The Alex Parties then settled with the plaintiffs for a confidential amount. That settlement released claims against Safety, as well.

The Alex Parties continued with their contribution action against Safety, which filed a motion for summary judgment, arguing it owed no duty to the plaintiffs based on its oral contract with E-K. The district court denied this motion, and the Alex Parties and Safety proceeded to trial to resolve the Alex Parties' contribution claim. Before trial, the district court determined that, as a matter of Illinois law, the Alex Parties, Safety, and E-K all must appear on the verdict form so that the jury could adequately apportion fault among every party,

even though the court had dismissed E-K. The court also determined, based on its interpretation of the Contribution Act, the share of liability that the jury assigned to E-K should not be redistributed between the Alex Parties and Safety on a pro rata basis—instead, Safety would pay to the Alex Parties only what the jury determined was its portion of fault, and the Alex Parties would remain liable for E-K's entire share along with its own.

At trial, the Alex Parties and Safety disputed the scope of the oral contract in which Safety agreed to provide services to E-K. Safety, on one hand, contended that it agreed to provide only services related to workers' compensation insurance. The Alex Parties, meanwhile, introduced evidence depicting a broader agreement covering all site safety issues. The president of Safety—Mike Sicking—admitted at trial that he authored the Site Specific Safety Plan ("the Plan"), which E-K submitted to the Illinois Department of Transportation. The Plan identified Sicking as the job Safety Director and the "primary" contact "to help assist in day-to-day safety issues." The Plan also stated that "traffic control shall be in accordance with the applicable sections of the standard specs for the road and bridge construction, [and] the applicable guidelines contained in the National Manual on Uniform Traffic Control Devices for Streets and Highways" (the "MUTCD"). Sicking admitted that he had agreed to perform a job hazard analysis for each job description on the site, establish corresponding safety procedures, and perform monthly audits to monitor compliance. He sent a written proposal to E-K offering services for $1,400 a month, and received that amount for his services. Sicking explained, though, that E-K did not take advantage of all the services offered. Sicking admitted, for

example, that he proposed to offer in-service safety training to E-K's employees, but that he never provided such training.

Sicking admitted that if he visited the construction site and saw something unsafe, he had the authority to stop that practice. Thus, if the saw the site was missing a "flagger-ahead" sign, he would have said something about it because it would have presented a safety issue. A flagger failing to give proper notice to oncoming drivers to stop was another such issue where he would have intervened. Sicking further admitted he was not on site on a daily basis and he never confirmed whether the flaggers were compliant with the Plan.

In support of Safety's theory, Sicking testified that the oral contract between Safety and E-K did not involve traffic control or flagger training, as Sicking claimed he did not get involved in flagging operations. Kevin Edwards, on behalf of E-K, testified that the oral contract between E-K and Safety did not provide for flagger training or designing traffic control procedures because the flagger union trains the flaggers and it was the duty of the contractor (in this case, E-K) to have traffic control procedures in place.

After the conclusion of the trial, the jury determined the respective percentage of fault for each party as follows:

| 10% | Safety International |
| 15% | The Alex Parties |
| 75% | Edwards-Kamadulski |

The Alex Parties were therefore on the hook for 90% of the total liability for the accident—their share plus E-K's. Safety, meanwhile, was only obligated to contribute 10%. The district court denied the Alex Parties' post-trial motion to alter or

amend the judgment under Federal Rules of Civil Procedure 59(e) and 52(b), which asked the court to revisit its determination of the reallocation issue. The court also denied Safety's post-trial motion for judgment as a matter of law under Rule 50(b), where Safety renewed its argument that the oral contract it entered into with E-K did not create a duty to the plaintiffs.

The Alex Parties appealed, contesting the district court's resolution of the reallocation issue. Safety cross-appealed, once again arguing that the district court erred in determining it owed a duty to the plaintiffs.

## II. Discussion

A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which its sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The parties agree Illinois law governs this matter. We review a district court's interpretation of state law de novo and the application of the legal standard to the facts for clear error. *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 648 (7th Cir. 2011).

We review a district court's ruling on a Rule 50(b) motion for judgment as a matter of law de novo, construing "the trial evidence 'strictly in favor of the party who prevailed before the jury.'" *Thorne v. Member Select Ins. Co.*, 882 F.3d 642, 644 (7th Cir. 2018) (quoting *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 822 (7th Cir. 2016)). "We give the nonmovant 'the benefit of every inference' while refraining from weighing for ourselves the credibility of evidence and testimony." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 601 (7th Cir. 2019) (quoting *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 621 (7th Cir. 2018)). Accordingly, "we must

affirm unless there is 'no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party.'" *J.K.J. v. Polk Cty.*, 960 F.3d 367, 378 (7th Cir. 2020) (en banc) (quoting *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 926 (7th Cir. 2004)).

## A. Safety's Duty to the Plaintiffs

We begin our analysis with Safety's cross-appeal, in which Safety challenges whether the Alex Parties presented sufficient evidence at trial to show that the oral contract between Safety and E-K created a duty that Safety owed to the plaintiffs to ensure the safety of the construction site. If there is not a sufficient evidentiary basis for the existence of this duty, the Alex Parties' contribution action against Safety is doomed.

Under Illinois law, "the negligent performance of contractual duties causing physical injury can give rise to tort liability regardless of whether privity of contract exists between the plaintiff and the defendant, and the scope of the defendant's duty is dependent on the terms of the contract." *Unger v. Eichleay Corp.*, 614 N.E.2d 1241, 1245 (Ill. App. Ct. 1993) (citations omitted). In many contexts, Illinois courts have noted that a contract defines the scope of a duty between a contractor and the general public. *See Thompson v. Gordon*, 948 N.E.2d 39, 51–52 (Ill. 2011) (contract between a general contractor and engineering firm defined the scope of the engineering firm's duties to the general public); *Ferentchak v. Vill. of Frankfort*, 475 N.E.2d 822, 825–26 (Ill. 1985) (civil engineer had no duty to homeowner to set foundation grades because his contract with the land developer did not require him to do so); *Block v. Lohan Assoc., Inc.*, 645 N.E.2d 207, 224 (Ill. App. Ct. 1993) (structural engineer did not a have a duty to ensure safety to the employees of the general contractor where the contract

with the general contractor was limited to design conformance); *O'Brien v. Musfeldt*, 102 N.E.2d 173, 178 (Ill. App. Ct. 1951) (contract between engineering firm and the state created a duty to the general public to install warning signs). Indeed, contractors have "a duty to protect members of the public from injuries in connection with construction work on highways," in particular. *Mora v. State*, 369 N.E.2d 868, 871–72 (Ill. 1977) (collecting cases).[2]

Where a negligence action derives from a contractual obligation, "[t]he question of whether a duty exists … is determined by the terms of the contract, and the duty, if any, will not extend beyond that described in the contract." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 746 (7th Cir. 2007) (quoting *Putman v. Vill. of Bensenville*, 786 N.E.2d 203, 208 (Ill. App. Ct. 2003)); *see also Melchers v. Total Elec. Constr.*, 723 N.E.2d 815, 818 (Ill. App. Ct. 1999). Ordinarily, the determination of whether a duty exists is a question of law. *Ward v. K Mart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990). But the terms of an oral contract, along with whether it exists, its conditions, and the intent of

---

[2] Safety cites a handful of cases purporting to contradict the proposition that a contract can establish and define a duty between a contractor and the general public, but none of them refute this statement of the law. Indeed, in two of the cases Safety cites, the court held that a contract did not create a duty to protect the general public from intervening criminal acts specifically. *See Sanchez v. Wilmette Real Estate & Mgmt. Co.*, 934 N.E.2d 1029, 1037 (Ill. App. Ct. 2010) (apartment complex did not undertake a duty to protect tenants from harm by a third-party attacker); *Chelkova v. Southland Corp.*, 771 N.E.2d 1100, 1110 (Ill. App. Ct. 2002) (holding that a franchisee was not liable to an employee who was assaulted on the premises, despite the franchisee undertaking to provide certain security measures). This key factual difference distinguishes those cases from the one we address today.

the parties, are questions of fact for the jury to determine. *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 848 (7th Cir. 1998) (citing *Mulliken v. Lewis*, 615 N.Ed.2d 25, 27 (Ill. App. Ct. 1993); *In re Estate of Kern*, 491 N.E.2d 1275, 1280 (Ill. App. Ct. 1986)). If the contract is ambiguous, the parties may introduce extrinsic evidence to help the factfinder interpret the contract. *Kurti v. Fox Valley Radiologists, Ltd.*, 464 N.E.2d 1219, 1226 (Ill. App. Ct. 1984).

Here, there was sufficient evidence for a jury to conclude that Safety entered into an oral agreement to provide E-K general safety services, beyond those strictly pertaining to workers' compensation matters. The jury heard evidence that Safety prepared and submitted a Site Specific Safety Plan to the Illinois Department of Transportation designating Sicking as the site Safety Director, making him responsible for "day-to-day safety issues," and committing to keeping traffic control in compliance with Occupational Safety and Health Administration ("OSHA") mandates and the MUTCD. The Alex Parties also put forth evidence that Safety offered in-service training about safety hazards in its proposal for $1,400 a month, and that E-K paid that $1,400 a month. Sicking also testified that if he saw an employee engaged in an unsafe practice, such as improper flagging procedures, he had the authority to stop that practice. And the jury heard that Sicking had committed to devising safety procedures and performing monthly audits to monitor compliance. All of this amounted to a legally sufficient evidentiary basis for a jury to conclude that the terms of the oral contract obligated Safety to ensure the flaggers executed their duties in accordance with appropriate safety standards, through training, creation of proper procedures, and monitoring.

Safety raises two additional arguments, neither of which succeeds. First, it argues that the Alex Parties failed to prove that its settlement with the plaintiffs released Safety, which the Alex Parties must do to prevail on their contribution claim. But Safety and the Alex Parties stipulated that the settlement released all claims against Safety, and Safety therefore cannot contest this point on appeal. Second, Safety argues that the district court erred in denying Safety's motion for judgment as a matter of law because the Alex Parties alleged in their third-party complaint that Safety had failed to train and supervise *its own* employees and never amended their complaint to allege a failure to train *E-K's* employees. Although Safety raised this argument before the district court, it did so belatedly: the argument appears only in Safety's post-trial motion. Safety's argument therefore came too late, and Safety has waived it. *Anderson v. Flexel, Inc.*, 47 F.3d 243, 247 (7th Cir. 1995) ("We have repeatedly stated that post-judgment motions cannot be used to raise arguments or legal theories that could have been and should have been brought before judgment.").

**B. Illinois Joint Tortfeasor Contribution Act**

We next turn to whether the district court erred in concluding that, pursuant to the Contribution Act, the share of liability that the jury assigned to E-K should not be redistributed between the Alex Parties and Safety on a pro rata basis. The Contribution Act states that "[n]o tortfeasor is liable to make contribution beyond his own pro rata share of the common liability." 740 ILCS 100/2(b). The Contribution Act continues,

> The pro rata share of each tortfeasor shall be determined in accordance with his relative

culpability. However, no person shall be required to contribute to one seeking contribution an amount greater than his pro rata share *unless the obligation of one or more of the joint tortfeasors is uncollectable*. In that event, the remaining tortfeasors shall share the unpaid portions of the uncollectable obligation in accordance with their pro rata liability.

*Id*. § 3 (emphasis added). The district court deemed that E-K was not an uncollectable party, and thus did not reallocate E-K's share of liability between the Alex Parties and Safety. Thus, the key question from the Alex Parties' appeal is the meaning of the exception italicized above.

The Alex Parties point to § 2(d) of the Contribution Act, which provides that a tortfeasor who settles with a claimant in good faith "is discharged from all liability for any contribution to any other tortfeasor." *Id*. § 2(d). The plain language of this provision, the Alex Parties contend, makes a settling defendant—such as E-K—uncollectable in any future contribution action. "Discharged," however, does not necessarily mean "uncollectable." We are unable to find, at least, any instance where an Illinois court has said it does.

Unfortunately, no precedent from the Illinois Supreme Court (nor any appellate court in Illinois) addresses whether the obligation of a settling party is uncollectable pursuant to the Contribution Act. In *Illinois Tool Works, Inc. v. Indep. Mach. Corp.*, 802 N.E.2d 1228 (Ill. App. Ct. 2003), a case upon which the Alex Parties heavily rely, Illinois Tool Works settled with the underlying plaintiffs, and then pursued its contribution claim against the remaining unsettled defendant. *Id.* at 1229–30. But that defendant asserted that any liability owed in

contribution was capped according to the amount of its statutory liability under the Workers' Compensation Act, 820 ILCS 305. *Id*. The statutory cap—not a party's settlement, as here—rendered the defendant's obligation uncollectable. *Id.* at 1231 ("[W]hile an employer may be subject to contribution, its liability is strictly limited to the amount of its worker's compensation liability."). *Illinois Tool Works* thus does not answer the question before us.

The Alex Parties also cite to *Ready v. United/Goedecke Servs., Inc.*, 905 N.E.2d 725 (Ill. 2008), but that case dealt with § 2-1117 of the Illinois Code of Civil Procedure, an entirely different provision than the one at issue here. *Id.* at 728 (discussing 735 ILCS 5/2-1117). Indeed, that provision does not even include the pivotal term "uncollectable." And *Coney v. J.L.G. Indus., Inc.*, 454 N.E.2d 197 (Ill. 1983), another case the Alex Parties cite, interprets the relevant section of the Contribution Act, but only as it applies to "insolvent or immune defendant[s]." *Id.* at 206. That case does not define the meaning of the relevant exception, nor does it resolve whether the obligation of a settling party qualifies.

Without much by way of caselaw on their side, the Alex Parties resort to public policy arguments, namely, that the district court's ruling discourages third-party plaintiffs from settling with plaintiffs if they are "left holding the bag" for other settling defendants. Safety counters that it should not be on the hook for an amount to which the Alex Parties voluntarily agreed, as the Alex Parties chose to settle with the plaintiffs for an amount greater than their pro rata share. We agree with the Illinois Supreme Court, however, that "[d]eciding between such competing policy positions is, in our view, a task better left to the legislature." *Ready*, 905 N.E.2d at 733.

Given the possible impact of the resolution of this controlling issue on Illinois citizens, we decline to decide it in the first instance and instead certify it to the Illinois Supreme Court. "'Certification of a controlling issue of state law to the highest court of the state is one method of reducing the possibility of error' in trying to predict what course the state supreme court might choose." *United States v. Glispie*, 943 F.3d 358, 372 (7th Cir. 2019) (quoting *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 638 (7th Cir. 2002)). Illinois Supreme Court Rule 20 provides that, when it appears to "the United States Court of Appeals for the Seventh Circuit[] that there are involved in any proceeding before it questions as to the law of this State, which may be determinative of the said cause, and there are no controlling precedents in the decisions of this court, [the Seventh Circuit] may certify such questions of the laws of this State to this court." Ill. S. Ct. R. 20(a). In this case, the question of whether the obligation of a settling party is uncollectable will determine whether the Alex Parties may recover more than Safety's pro rata share to account for E-K's liability, and thus will control the outcome of this appeal. We can find no Illinois cases resolving this issue. We therefore respectfully ask the Illinois Supreme Court to answer the question of whether the obligation of a settling party is uncollectable pursuant to the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/3 (2019).

We invite the Justices of the Illinois Supreme Court to reformulate our question if they feel that course is appropriate. We do not intend anything in this certification to limit the scope of their inquiry. The Clerk of this Court will transmit the briefs and appendices in this case, together with this opinion, to the Illinois Supreme Court. On the request of that

Court, the Clerk will transmit all or any part of the record as that Court so desires.

QUESTION CERTIFIED.