(No. 47368.-

RONALD L. MORA *et al.*, Appellants, v. THE STATE OF
ILLINOIS *et al.*, Appellees.

*Opinion filed Oct. 5, 1977.—Rehearing denied Nov. 23, 1977.*

Louis G. Davidson & Associates, Ltd., of Chicago (Louis G. Davidson and Robert B. Patterson, of counsel), for appellants.

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel and Patricia Rosen, Assistant Attorneys General, of Chicago, of counsel), for appellee State of Illinois.

Ruff & Grotefeld, Ltd., of Chicago (William Sven Grotefeld, Robert J. Klovstad and Robert A. Deane, of counsel), for appellee Eaton Asphalt Company.

Menk, Bishop & Kezelis, of Chicago (John Cadwalader Menk and John T. Mehigan, of counsel), for appellee Peoria Blacktop, Inc.

French & Rogers, of Chicago (Richard G. French and Michael C. Kominiarek, of counsel), for appellees Robert H. Blasius, Claude Hershey, and Clay H. Skinner.

MR. JUSTICE DOOLEY delivered the opinion of the court:

Plaintiffs, Ronald L. Mora, Carolyn Knaus, and Dennis Dannel, brought suit to recover damages for personal injuries sustained when an automobile in which they were riding as passengers was struck by a car driven by William J. Clemens. Named as defendants were Ronald Chapman, the driver of plaintiffs' car, the State of Illinois, two paving

contractors, Peoria Blacktop, Inc., and Eaton Asphalt Company, and three employees of the State Department of Transportation, Robert H. Blasius, Claude Hershey and Clay H. Skinner, who were sued in their individual capacity.

On plaintiffs' motion, Chapman was dismissed as a party defendant before trial. The trial court also dismissed the State as a party before trial. At the close of plaintiffs' case the court directed a verdict in favor of the other defendants. Plaintiffs appealed to the appellate court, and the cause was transferred here under Rule 302(b) (58 Ill. 2d R. 302(b)) because of multiple cases challenging the validity of the Court of Claims Act (Ill. Rev. Stat. 1975, ch. 37, par. 439.1 *et seq.*) and the statute providing that the State of Illinois may not, except as provided in the Court of Claims Act, be sued in any court (Ill. Rev. Stat. 1975, ch. 127, par. 801).

Here the issue is as old as the judge and jury system. Was it proper to direct a verdict for the defendants at the close of the plaintiffs' case? Such requires an examination of the evidence.

Clemens was originally made a defendant. After the close of plaintiffs' case and entry of the directed verdict, he entered into a settlement with Mora, and was dismissed from the action by agreement. Ronald Chapman, the driver of the car in which plaintiffs were riding, was also named as a defendant when the action was filed, but was also dismissed by plaintiffs. Plaintiffs did not call him as a witness.

Clemens, called as an adverse witness, testified as follows: The accident took place at 5:30 a.m. on August 8, 1970. It was dark and rainy. Clemens was headed south on the two-lane highway. He had been following another car operated by Susan Maves with a trailer attached, and decided to pass it. He looked to see if it was safe to do so and saw no approaching car and no headlights. When about

75 feet behind the trailer, Clemens pulled into the northbound lane and accelerated to about 65 miles per hour (the posted limit) in order to begin the maneuver. Whether the roadway was straight or curved when Clemens commenced his effort to pass does not appear from this record.

For approximately one-half mile north of the site of the accident the highway is straight. At the scene of the occurrence the roadway goes up a small hill and makes a double-S blind curve. The plaintiffs' car was approaching the crest of the hill from the south. Because of the topography, neither the car nor the beam of its headlights was visible to Clemens, then on the left side of the highway. Clemens first saw plaintiffs' car when it was some 400 to 600 feet away. He at first increased his speed to avoid a collision by completing his passing operation and returning to the southbound lane. He realized that this goal could not be achieved and applied his brakes. A collision occurred between Clemens' southbound car and Chapman's northbound vehicle in the northbound traffic lane.

The liability of the State, its employees, and the paving contractors is predicated on the lack of signs or markings on the highway which would have advised Clemens that he was at a point where passing would be hazardous. The connection of Peoria Blacktop, Inc., and Eaton Asphalt Company to the case stems from the fact that the Department of Transportation had hired the former to resurface and widen the highway in the vicinity where the collision occurred, and that the performance of the contract had been assigned by Peoria Blacktop to Eaton, presumably with the Department's consent. The repaving of the portion of the highway had been completed a short time before the accident.

The theory of plaintiffs' case is that if Clemens had been informed that he was approaching a hill and a curve,

he would not have attempted to pass and the collision would not have taken place.

Clemens was a resident of Wisconsin, and he had never driven this portion of the highway before. Although plaintiffs called him as an adverse witness, he was not asked whether he would have refrained from passing had the road been differently marked.

Before taking up the legal obligations of the other defendants, we dispose of the suit against the State. Illinois law requires tort claims against the State to be pursued in the Court of Claims. (Ill. Rev. Stat. 1975, ch. 37, par. 439.8; ch. 127, par. 801.) Plaintiffs contend that those provisions are invalid under the equal protection and due process clauses of the Federal Constitution. Within the space of two years this court has twice rejected that contention. (See *Williams v. Medical Center Com.* (1975), 60 Ill. 2d 389; *Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109.) We adhere to those decisions, and no further discussion of that issue is necessary. The dismissal of the State from this action is affirmed.

The entry of a directed verdict in favor of defendant Peoria Blacktop, Inc., must also be affirmed. As we have noted, that company had assigned the performance of its repaving contract to defendant Eaton Asphalt Company, and there is no evidence that Peoria Blacktop participated in any way.

The crucial question here is whether there could be an issue of fact as to the responsiblity of Eaton and the three individual defendants. In determining this question, we shall consider all evidence which could be within the broad doctrine of *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, notwithstanding that some was improperly excluded by the trial court.

It is conceded that before Eaton began the repaving operation the section of the highway where the accident occurred was not posted as a no-passing zone, nor with any

sign advising that a curve and a hill lay ahead. Introduced in evidence was a publication of the Department of Public Works and Buildings, entitled Illinois Manual of Uniform Traffic Control Devices for Streets and Highways. It provides that a no-passing zone is to be established in any area where a motorist's ability to see ahead falls below a specified minimum. On the basis of extensive surveys taken after the accident, plaintiffs contend that the roadway here in question would qualify for posting as a no-passing zone under the standards set by the manual. This proposition is not seriously controverted by defendants.

Prior to its repaving and widening, the road had been marked with an intermittent, white center line and with a white edge line at each side of the paved portion. As a necessary result of the resurfacing, all these lines were obliterated. When the repaving was completed at this sector of the overall 13-mile project, Eaton placed strips of reflecting tape to indicate the center line as was required under the contract with the State. There is no contention that the proper side of the highway was unknown to Clemens. No temporary tape, however, was put in to mark the new edges of the road.

The repainting of permanent lines on the road after its resurfacing was a function of the Department and had not been imposed upon the paving contractor. According to the testimony, paint cannot be applied to new asphalt until it has cured. On August 8, when the accident occurred, the repaving of this portion of the highway had been completed to a point about 10 miles north of the site, but neither the center line nor the edge lines had as yet been repainted.

The uniform rule appears to be that a contractor has a duty to give warnings of dangers created by it. (*Roberts v. Town of Cicero* (1938), 369 Ill. 639, 642; *cf. Brooks v. Dean Berenz Asphalt Co.* (1967), 83 Ill. App. 2d 258;

*McClendon v. T. L. James & Co.* (5th Cir. 1956), 231 F.2d 802; *Schwarcz v. Charlton County* (1955), 211 Ga. 923, 89 S.E.2d 881; *Archer v. Rogers Construction, Inc.* (1968), 252 Ore. 165, 447 P.2d 380.) The danger of the curve was not a consequence of Eaton's conduct. Eaton did not create the topography of the land. Eaton's repaving did not change the configuration of the roadway, nor did it remove any warnings indicating the presence of a danger zone.

Plaintiffs cite numerous decisions from Illinois and other jurisdictions, and our research has revealed more, in which contractors have been held to a duty to protect members of the public from injuries in connection with construction work on highways. In each case, however, the contractor itself created the risk.

Duties of contractors assume many shapes and forms. Contractors must: (a) adequately mark highway detours they have constructed (*Green v. Welts* (1970), 130 Ill. App. 2d 600; *Smith v. Lafortune* (1970), 288 Minn. 135, 179 N.W.2d 136; *Best v. Fred Weber Construction Co.* (Mo. App. 1975), 525 S.W.2d 102; *Transcon Lines Corp. v. Cornell Construction Co.* (Okla. 1975), 539 P.2d 1372); (b) warn of excavations they have created or exposed (*Hogan v. Hill* (1958), 229 Ark. 758, 318 S.W.2d 580; *Martin v. Farr Brothers Co.* (1918), 211 Ill. App. 235; *Huber v. Cornhusker Paving Co.* (1974), 191 Neb. 108, 214 N.W.2d 269; *Strakos v. Gehring* (Tex. 1962), 360 S.W.2d 787; *Ross Anglin & Son v. Brennan* (Tex. Civ. App. 1971), 466 S.W.2d 832; *Gilpatrick Construction Co. v. Wind River Ready-Mix Concrete Co.* (Wyo. 1970), 473 P.2d 586); (c) warn of obstructions, uneven surfaces and other dangers they place in road surfaces or pedestrian pathways (*Cohen v. Sahuaro Petroleum & Asphalt Co.* (1972), 17 Ariz. App. 215; 496 P.2d 641 (slippery road surface); *Ferguson v. Ben M. Hogan Co.* (W.D. Ark. 1969), 307 F. Supp. 658 (uneven surface); *Pioneer Construction*

*Co. v. Richardson* (1971), 176 Colo. 254, 490 P.2d 71 (gravel on road surface); *Kirby v. General Paving Co.* (1967), 86 Ill. App. 2d 453 (lamppost bases); *Rodgers v. Meyers & Smith, Inc.* (1965), 57 Ill. App. 2d 200 (loose sewer cover); cf. *Harrelson v. Travelers Insurance Co.* (La. App. 1961), 128 So. 2d 254 (contractual duty; break in pavement); *Meil v. Syracuse Constructors, Inc.* (1963), 19 App. Div. 2d 10, 240 N.Y.S.2d 403 (mud accumulation)); (d) warn drivers that there was an abrupt narrowing of the road at a bridge (*Powers v. J. B. Michael & Co.* (6th Cir. 1964), 329 F.2d 674); and (e) warn of lane changes required by their work on the highway (*Martin v. Central Engineering Co.* (1953), 350 Ill. App. 589; *Ohlweiler v. Central Engineering Co.* (1952), 348 Ill. App. 246; *O'Brien v. Musfeldt* (1951), 345 Ill. App. 12 (three cases arising out of the same accident where contractor failed to warn that traffic must cross over into newly constructed lanes); *Reynolds-Land, Inc. v. Raleigh* (Tex. Civ. App. 1968), 435 S.W.2d 255 (failure to post two-way traffic ahead sign); *Word v. Clifton* (Tex. Civ. App. 1966), 399 S.W.2d 424 (failure to indicate lane was carrying two-way traffic)).

Plaintiffs refer to Illinois appellate court cases to the effect that contractors have a duty to warn where there is unequal knowledge, actual or constructive, of a dangerous condition and the contractor knows or should know that harm might or could occur if no warnings are given. In both *Green v. Welts* (1970), 130 Ill. App. 2d 600, and *Kirby v. General Paving Co.* (1967), 86 Ill. App. 2d 453, the contractors had created the hazard and knew of the dangerous condition which was not apparent to those using the roadway.

Plaintiffs allege that in the present case the contractor enhanced the risk when it removed the edge line. Expert evidence was that a white edge line indicates the direction of a highway as the driver proceeds. There is no evidence that Clemens either was watching the edge of the highway

or that the road was curving when he commenced his effort to pass by moving onto the left-hand side of the highway.

Apart from an inability to appreciate what part a white edge line would have played in this occurrence, it is the Department, not the contractor, who had responsibility for laying down such lines. The dangers arose out of the very nature of the roadway as it had existed long before the contractor came on the scene. The contractor could not be saddled with what was a duty of the State. For these reasons we conclude that it was proper to direct a verdict for Eaton Asphalt Company. See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.

We consider the liability of the three employees of the Department. The thrust of plaintiffs' action against them is their failure to establish a no-passing zone on the highway near the point of the collision. At the outset there is no difficulty in releasing Hershey and Skinner. Each was assigned to the construction division for the Ottawa district, and not to the traffic division, which is in charge of line painting. The traffic division was headed at the time by Alan Jensen, not a party to this suit.

Plaintiffs contend, nonetheless, that Blasius, at least, who was head of the district, should have established a no-passing zone at the site. It must be appreciated that the hill and the curve at the site were gentle, and that the alleged deficiency in sight distance was not obvious to the naked eye.

Plaintiffs urge that Blasius, to whom Jensen reported, should have directed the latter to conduct a survey to determine whether such a zone was called for under the Department's manual of uniform traffic-control devices. Plaintiffs' position would in effect require Blasius to make a survey of the entire 1,200 miles of State roads located in his district and evaluate the data obtained. A mere description of what would be involved shows that this

activity must be characterized as discretionary, rather than ministerial. That being so, Blasius cannot be charged with individual liability.

The comments of the appellate court in *Lusietto v. Kingan* (1969), 107 Ill. App. 2d 239, are pertinent. There a State district engineer was sued individually to recover damages arising out of the alleged failure to place barricades around a large and dangerous hole in the highway. The appellate court, in holding for the defendant, stated:

> "[T]he defendant's duties were not ministerial, they were governmental in character and required the exercise of discretion and judgment. With regard to holes in the highway, the defendant must exercise discretion and judgment as to which holes to fill and which holes not to fill. Of the holes to be filled, which holes are to be filled first? He must perform all of this within the limitations of available manpower, equipment and finances. It is a well established principle of the common law that an immunity exists in favor of public officials when they are exercising their official discretion on matters which are discretionary in nature and not ministerial. [Citations.] Quite apart from the doctrine of governmental immunity, the case law in this state has developed the doctrine of public officials' immunity. This doctrine is distinguished from and founded on a different rationale from the principle of governmental immunity. See note 1966, Illinois Law Forum 981, at 995. *** [T]he duty to keep highways in repair was a duty which required the exercise of judgment and discretion and that in performing this duty the commissioners were clothed with discretion as to the practicability of making improvements and as to the best methods

to be employed, they were therefore protected by this theory of immunity. We believe that the defendant in the case now before us is entitled to that same immunity. Although the case of Molitor v. Kaneland Community Unit School Dist., 18 Ill. 2d 11, 163 N.E.2d 89, abolished the principle of governmental immunity, it did not destroy the principle of public officials' immunity ***." (107 Ill. App. 2d 239, 244.)

The proposition announced in *Lusietto* that a public officer is immune from personal liability for the performance of discretionary duties was recently reaffirmed by this court in *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 502.

The language of section 11–707(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11–707(a)) further supports our characterization of this matter as one involving discretion.

"(a) The Department and local authorities *are authorized to determine* those portions of any highway under their respective jurisdictions where overtaking and passing or driving on the left of the roadway would be especially hazardous and may by appropriate signs or markings on the roadway indicate the beginning and end of such zones, and when such signs or markings are in place and clearly visible to an ordinarily observant person every driver of a vehicle shall obey the directions thereof." (Emphasis added.)

By way of analogy we note as well that section 2–201 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 2–201) incorporates the same criterion for employees of local government units. It provides:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining

policy when acting in the exercise of such discretion even though abused."

Section 3—104 of the same act (Ill. Rev. Stat. 1975, ch. 85, par. 3—104) provides as follows:

"(a) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating signs.

(b) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to provide traffic warnings signals, signs, markings or other devices unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care."

See also Prosser, Torts sec. 132, at 987-88 (4th ed. 1971).

Count V of the complaint alleged that each of the individual defendants was covered by public liability insurance against damages arising out of the accident. Plaintiffs contend that the existence of this insurance removed, or reduced *pro tanto*, whatever immunity defendants might otherwise enjoy. Defendants took the position that a clause in the policy excluding damages arising out of the rendition of professional services applied. The trial court accepted defendants' position and dismissed count V.

Plaintiffs cite no statutory provision by which liability insurance covering a State employee defeats his claim to the immunity accorded public officers. The only precedent cited is a decision of the appellate court in *Thomas v. Broadlands Community Consolidated School District No. 201* (1952), 348 Ill. App. 567. The holding in that case was that any immunity enjoyed by the school district was destroyed to the extent that there was liability insurance available. This case is not germane here. It was decided

prior to *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, in which the common law immunity of school districts and inferentially other municipal corporations was abolished.

*Thomas v. Broadlands* is also irrelevant to the present case since it deals only with the immunity of a governmental entity, not with the immunity enjoyed by a public officer or employee of the entity, which, as we have seen, rests on different considerations. See J. S. Judge, *Tort Immunity Act: Only Certain Immunities Are Waived by Public Entity's Purchase of Insurance*, 63 Ill. B.J. 386 (1975).

We accordingly affirm the judgment of the circuit court of Cook County.

*Judgment affirmed.*