CATHERINE GREESON, Plaintiff-Appellant, v. MACKINAW TOWNSHIP *et al.*, Defendants-Appellees.

Third District   No. 3—90—0248

Opinion filed December 13, 1990.—Rehearing denied January 30, 1991.

194

Richard L. Steagall, of Nicoara & Steagall, of Peoria, and Daniel M. Harrod, of Harrod Law Firm, of Eureka, for appellant.

Edwin R. Cummings, of Judge & Knight, Ltd., of Park Ridge, for appellees Mackinaw Township and Curtis Yoder.

John E. Cassidy III, of Cassidy & Mueller, of Peoria, for appellees Tazewell County and Terry Gardner.

JUSTICE KNECHT delivered the opinion of the court:

Catherine Greeson sustained injuries when the car she was driving overturned on an S curve on a township road owned by Mackinaw Township and located in Tazewell County. She filed a complaint against Mackinaw Township (Township), Curtis Yoder, the highway commissioner of Mackinaw Township (Yoder), Terry Gardner, the superintendent of highways for Tazewell County (Gardner), and Tazewell County (County), alleging negligence and seeking damages in excess of $15,000 from each defendant. The circuit court granted summary judgment for the Township and dismissed with prejudice the counts of the complaint against the remaining defendants. We affirm.

The plaintiff's complaint, filed in Tazewell County on October 31, 1988, contained the following allegations. The Township owned Township Road 1470N, also known as Fast Avenue. The road is a narrow blacktop with an unposted speed limit. It has several small hills and rises which obscure portions of the road, including the S curve, from motorists' views. The S curve is marked by an S curve yellow warning sign located 407 feet from the beginning of the curve. The complaint alleged, *inter alia*:

> "The roadway in the area of the 'S' curve which runs in a generally easterly and westerly direction turns at a severe angle in the northern and southern direction; the severe angle of the turn is unapparent to motorists operating their vehicles in

a westerly direction on the roadway at a safe and proper speed at a sufficient intervals [*sic*] so as to allow the motorist [*sic*] to slow their vehicle [*sic*] to negotiate the 'S' curve in a safe manner, a condition which renders the roadway unreasonably dangerous to motorists operating their vehicles thereon."

On October 31, 1987, at 12:30 a.m. plaintiff was driving her vehicle west on Fast Avenue. She was unfamiliar with the road. As she approached the S curve, which she could not see in advance, she realized, in her own words, "her speed was excessive." When she attempted to brake the car, it slid sideways, rolled over and landed on its wheels, off the road. The plaintiff received severe and permanent injuries.

The plaintiff alleged the Township, through its authorized agent, Yoder, should have known of the existence of the unreasonably dangerous condition on Fast Avenue. The Township, acting through its agents and employees, allegedly committed the following negligent acts or omissions:

"(a) Negligently and carelessly failed to warn the motorists operating their vehicles on the roadway in a westerly direction at a safe interval sufficient to allow them to slow their vehicle [*sic*] to negotiate the 'S' curve in a safe and proper manner;

(b) Negligently and carelessly failed to warn motorists of vehicles operating in a westerly direction on Fast Avenue of the hilly nature and 'S' curves existing in the roadway which make operation at a speed of the vehicle [*sic*] in excess of 45 miles per hour unsafe."

As highway commissioner for the Township, Yoder's duties are enumerated in the Illinois Highway Code (Ill. Rev. Stat. 1987, ch. 121, pars. 6—201.1 through 6—201.18) and included placing, erecting, and maintaining traffic-control devices. Count II alleged Yoder knew, or should have known, of the unreasonably dangerous condition of Fast Avenue and, like the Township, should have placed the warning sign farther from the S curve to allow motorists time to slow down and safely negotiate the curve. He should also have posted a 45-mile-per-hour speed-limit sign.

Count III, against Gardner, alleged he voluntarily assumed a duty to direct highway commissioners, in the road districts in his county, to erect and place proper signs for township roads. He failed to use ordinary care to advise the Township and Yoder of the unreasonably dangerous condition of the road due to improper placement of the warning sign before the S curve, to place the warning sign farther from the S curve, and of the necessity of posting a 45-mile-per-hour speed-

limit sign before the curve.

Count IV, against Tazewell County, alleged the County, acting through its agent Gardner, committed the negligent acts and omissions delineated above, though it knew or should have known of the unreasonably dangerous condition of Fast Avenue.

The Township and Yoder filed a motion to dismiss counts I and II of the complaint for failure to state a cause of action (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). The motion contended local public entities and their employees cannot be liable for failing to provide traffic warning signs under section 3—104 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1987, ch. 85, par. 3—104). The complaint also failed to state a cause of action, according to the Township and Yoder, because it pleaded no facts suggesting the existing warning sign was inadequate or improper, Yoder is immune from liability for discretionary actions under the doctrine of public official immunity, and the sole proximate cause of the accident was plaintiff's excessive speed.

Gardner and Tazewell County filed a motion to dismiss counts III and IV. Gardner alleged he was immune from liability because the plaintiff failed to meet a statutory notice requirement (Ill. Rev. Stat. 1987, ch. 121, pars. 383, 384, 385) and because he is a public employee within the meaning of the Act (Ill. Rev. Stat. 1987, ch. 85, pars. 2—201, 3—104). Count III was also allegedly defective because it failed to aver Gardner's advice was requested in writing by the highway commissioner (Yoder) as required by statute (Ill. Rev. Stat. 1987, ch. 121, par. 5—205.3).

Tazewell County moved to dismiss count IV because section 2—109 of the Act immunizes it from liability. (Ill. Rev. Stat. 1987, ch. 85, par. 2—109.) Like Gardner, the County also claimed the plaintiff failed to meet the statutory notice requirement of the Illinois Highway Code (Code) (Ill. Rev. Stat. 1987, ch. 121, pars. 383, 384, 385).

Following a hearing, the circuit court denied the Township's motion to dismiss count I of the complaint, but granted Yoder's motion and dismissed count II with prejudice. The court dismissed count III, against Gardner, with prejudice.

> "Although the motion is not labeled, I have treated it as being brought under section 2—619(a)(9) of the Code of Civil Procedure. At the hearing Count III was dismissed with prejudice because the plaintiff did not comply with the six month notice requirement found in Illinois Revised Statutes, chapter 121, paragraph 383. The defendants' alternative grounds for dismissal, sections 2—201 and 3—104 of the Local Governmental

and Governmental Employees Tort Immunity Act (hereafter the Act), were not ruled on."

Because the count against Gardner was dismissed, the question was whether count IV could remain against the County. In a written order, the court stated:

"By its nature a unit of local government can act only through its 'employees' as that term is defined in section 1—202 of the Act, and it can fail to act only when all of its employees fail to act. Given this truth, a literal reading of section 2—109 would never allow the imposition of liability on a unit of local government unless some individual working for that government was also personally liable. Such an absurd construction was surely not intended by the legislature and has not been adopted by the courts. In lieu of a literal reading, I conclude that the legislative intent behind section 2—109 can clearly and logically be found by viewing the section in its context that is, governmental and governmental employee tort immunity. I believe the shield of section 2—109 is only available to a public entity whose 'employee is not liable [*because of an immunity conferred by the Act*].' "

The court then explored the alternative grounds for dismissal of count III. "If Count III is subject to dismissal because of a provision of the Act which shields the superintendent of highways, then section 2—109 would require dismissal of Count IV as well." The court began by explicitly reaffirming its rejection of the argument that section 3—104 of the Act immunizes the governmental conduct here. The remaining ground for dismissing count III was section 2—201 of the Act, which immunizes government officials for exercises of their discretion in determining policy. The court's order further stated:

"Accordingly, the question for decision is whether the superintendent's conduct in advising the township officials constitutes an exercise of discretion, as opposed to a ministerial act. Clearly this function is discretionary. The superintendent is to advise 'as to the *best* method of construction, repair, or maintenance,' Illinois Revised Statutes, chapter 121, section 5—205.3, which obviously requires the exercise of judgment. Accordingly, I conclude that Count III is subject to dismissal based on section 2—201 of the Act. [(Emphasis added.)]"

The court granted the County's motion to dismiss without leave to refile.

The Township filed a motion for summary judgment, pursuant to section 2—1005 of the Code of Civil Procedure. (Ill. Rev. Stat. 1987,

ch. 110, par. 2—1005.) The Township contended it owed the plaintiff no duty to position the S-curve warning sign any differently and no duty to reduce the speed limit. Additionally, there was no evidence the Township breached any duty of care owed to the plaintiff and it was immune from liability for the discretionary acts of its highway commissioner.

The court determined sections 2—109 and 2—201 of the Act applied to the Township and granted its motion for summary judgment. The plaintiff filed a timely notice of appeal.

The first issue is whether common law definitions of "discretionary" and "ministerial" functions are applicable today. The common law extended immunity to municipalities engaged in governmental functions, but held them liable for negligent performance of proprietary or ministerial functions.

> "It is well settled, that municipal corporations have certain powers which are discretionary or judicial in character, and certain powers which are ministerial. The powers of such corporations have also been divided into those which embrace governmental duties, such as are delegated to the municipality by the legislature, and in the exercise of which the municipality is an agent of the State; and those powers which embrace *quasi* private or corporate duties, exercised for the advantage of the municipal locality and its inhabitants. Municipal corporations will not be held liable in damages for the manner in which they exercise, in good faith, their discretionary powers of a public, or legislative, or *quasi* judicial character. But they are liable to actions for damages when their duties cease to be judicial in their nature, and become ministerial. [Citations.] Official action is judicial where it is the result of judgment or discretion. Official duty is ministerial, when it is absolute, certain and imperative, involving merely the execution of a set task, and when the law which imposes it, prescribes and defines the time, mode and occasion of its performance with such certainty, that nothing remains for judgment or discretion. (*People v. Bartels*, 138 Ill. 322)." *City of Chicago v. Seben* (1897), 165 Ill. 371, 377-78, 46 N.E. 244, 245-46.

See also W. Prosser, Torts §131, at 978-79 (4th ed. 1971).

The Illinois Supreme Court abolished common law municipal immunity in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89. The 1970 Illinois Constitution states: "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." (Ill. Const. 1970, art. XIII,

§4.) The Act now provides: "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." Ill. Rev. Stat. 1987, ch. 85, par. 2—109.

■ Municipal officers, like municipalities, were extended immunity from liability under the common law for discretionary acts, those requiring personal deliberation, decision, and judgment. They were not immune from negligent performance of ministerial acts, those amounting to an obedience of orders or the performance of a task in which the officer had no choice of his own. W. Prosser, Torts §132, at 988-89 (4th ed. 1971).

The Act now states:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." (Ill. Rev. Stat. 1987, ch. 85, par. 2—201.)

Cases considering a municipal employee's liability decided since the 1970 Constitution have employed common law definitions of discretionary and ministerial functions.

In *Lusietto v. Kingan* (1969), 107 Ill. App. 2d 239, 246 N.E.2d 24, the plaintiff administrator sued the State highway maintenance supervisor of a particular district, alleging he allowed a large hole to form in the highway. The decedent's car hit the hole, causing fatal injuries. The jury returned a verdict for the plaintiff but the Third District Appellate Court reversed, stating:

"[T]he defendant's duties were not ministerial, they were governmental in character and required the exercise of discretion and judgment. With regard to holes in the highway, the defendant must exercise discretion and judgment as to which holes to fill and which holes not to fill. Of the holes to be filled, which holes are to be filled first? He must perform all of this within the limitations of available manpower, equipment and finances. It is a well established principle of the common law that an immunity exists in favor of public officials when they are exercising their official discretion on matters which are discretionary in nature and not ministerial." *Lusietto*, 107 Ill. App. 2d at 244, 246 N.E.2d at 27.

The Illinois Supreme Court quoted this portion of the *Lusietto* opinion favorably in *Mora v. State* (1977), 68 Ill. 2d 223, 233-34, 369 N.E.2d 868, 873. The plaintiff in the *Mora* case sued, among others, Blasius, an employee of the Illinois Department of Transportation,

seeking to recover for injuries suffered when another motorist struck her car while attempting to pass a third car. The two-lane road had just been resurfaced but not restriped. One-half mile north of the accident site the highway was straight. At the accident location, however, the road went up a small hill and made a double-blind curve.

Testimony revealed there was no S-curve warning sign and no markings for a no-passing zone before the repaving began. The plaintiff claimed Blasius should have ordered a survey of the entire 1,200 square miles in his district to determine whether a no-passing zone should have been designated. "A mere description of what would be involved shows that this activity must be characterized as discretionary, rather than ministerial. That being so, Blasius cannot be charged with individual liability." *Mora*, 68 Ill. 2d at 232-33, 369 N.E.2d at 873.

In *Larson v. Darnell* (1983), 113 Ill. App. 3d 975, 448 N.E.2d 249, the plaintiff sued Darnell, the Illinois Department of Corrections, and a parole officer. Darnell, a minor, was released from the Department of Corrections and placed in the custody of a parole officer. One month later he raped and murdered the plaintiff's minor daughter. The Third District Appellate Court affirmed the circuit court's dismissal of the Department of Corrections and the parole officer because each was immune from liability "even if, as alleged, the acts were negligently performed, because in the performance of those acts it was necessary to exercise judgment or discretion." *Larson*, 113 Ill. App. 3d at 977, 448 N.E.2d at 251.

Citing *Larson*, the Second District Appellate Court defined discretionary acts as:

"[T]hose 'which are unique to the particular public office and not merely ministerial in nature.' (111 Ill. App. 3d 729, 731.) Conversely, ministerial acts are those 'which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority,' and without reference to the official's discretion as to the propriety of the act. *Larson v. Darnell* (1983), 113 Ill. App. 3d 975, 977." *Gavery v. County of Lake* (1987), 160 Ill. App. 3d 761, 764, 513 N.E.2d 1127, 1129.

With these definitions in mind, we turn to the next issue, whether, once a governmental entity decides to place a sign in a particular area, discretionary immunity ends. The plaintiff argues once the Township, through Yoder, decided to post the S-curve warning sign, it had a duty to post it in such a way that motorists would not be injured.

"A [municipal] corporation acts judicially, or exercises discre-

tion, when it selects and adopts a plan in the making of public improvements, such as constructing sewers or drains; but as soon as it begins to carry out that plan, it acts ministerially, and is bound to see that the work is done in a reasonably safe and skillful manner." *Seben*, 165 Ill. at 378, 46 N.E. at 246.

The court reached similar conclusions in *Roumbos v. City of Chicago* (1928), 332 Ill. 70, 163 N.E. 361, and *Johnston v. City of East Moline* (1950), 405 Ill. 460, 91 N.E.2d 401. These cases predate the 1970 Constitution and subsequent statutes.

The Act immunizes both municipalities and public employees from:

"[A]n injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." (Ill. Rev. Stat. 1987, ch. 85, par. 3—104.)

This statute does not answer the question because plaintiff does not contest the decision to post an S-curve warning sign. Instead, the plaintiff questions the decision to place the sign in a particular location.

■ The circuit court struck excerpts of the Manual of Uniform Traffic Control Devices (Manual) from the record because the plaintiff failed to timely present the excerpts. Thus, this court cannot consider whether Yoder complied with the Manual's requirements for posting warning signs. Arguably, failure to comply with its requirements would subject Yoder to liability for negligent performance of a ministerial duty. On this record, we conclude Yoder's decision to place the S-curve warning sign where he did was an exercise of his official discretion as it required personal judgment. Yoder is thus immune from liability under section 2—201 of the Act (Ill. Rev. Stat. 1987, ch. 85, par. 2—201). Because Yoder is not liable, the Township is not liable. Ill. Rev. Stat. 1987, ch. 85, par. 2—109.

The plaintiff next argues her allegations the Township owned Fast Avenue and she was a motorist on the roadway were sufficient to indicate she was within the class of people entitled to the benefit of section 3—102 of the Act (Ill. Rev. Stat. 1987, ch. 85, par. 3—102), and thus her complaint stated a cause of action. The statute states, in pertinent part:

"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and

permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a).

■■ "Section 3—102 of the [Tort Immunity] Act codifies the common law duty of a local public entity to maintain its property. [Citations.] The Act creates no new duties, but simply articulates the common law duty to which the subsequently delineated immunities apply." (*Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 428, 435, 495 N.E.2d 1259, 1264; *Havens v. Harris Township* (1988), 175 Ill. App. 3d 768, 771, 530 N.E.2d 284, 285, citing *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 445, 410 N.E.2d 610, 612.) The "subsequently delineated immunities" appear in the sections of the Act following section 3—102.

■■ We need not determine whether the plaintiff's allegations may have been sufficient to state a cause of action against the Township, having concluded the circuit court was correct to grant summary judgment for the Township. There were no genuine issues of material fact. The law immunized Yoder from liability for exercising his discretion (Ill. Rev. Stat. 1987, ch. 85, par. 2—201) and this, in turn, protected the Township from liability. Ill. Rev. Stat. 1987, ch. 85, par. 2—109.

■■■ The circuit court was also correct to grant Yoder's section 2—615 motion (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). A section 2—615 motion is similar to a motion for summary judgment as "both suggest no genuine issue of material fact exists." (*Mitchell v. Waddell* (1989), 189 Ill. App. 3d 179, 182, 544 N.E.2d 1261, 1262.) As stated in *Mitchell*:

"[T]he two motions differ in that a motion for judgment on the pleadings submits that no issue of triable fact existed and the movant is entitled to judgment under the averments and admissions of the pleadings, while a motion for summary judgment may utilize affidavits and other documents to establish the absence of a genuine issue of a material fact." (*Mitchell*, 189 Ill. App. 3d at 182, 544 N.E.2d at 1262-63.)

A section 2—615 motion to dismiss admits all well-pleaded facts as true. (*Towne v. Town of Libertyville* (1989), 190 Ill. App. 3d 563, 566, 546 N.E.2d 810, 813.) "A complaint should not be dismissed under

section 2—615 *** unless, clearly, no set of facts could be proven under the pleadings which would entitle the plaintiff to relief." (*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1988), 172 Ill. App. 3d 718, 721, 527 N.E.2d 97, 100.) The pleadings in this case raised no genuine issues of triable fact against Yoder and thus the circuit court properly granted Yoder's section 2—615 motion.

■ Plaintiff next argues the six-month notice requirement of section 3 of the Code and $10,000 damage limitation of section 5 of the Code (Ill. Rev. Stat. 1987, ch. 121, pars. 383, 385) do not operate in favor of Tazewell County. The plaintiff contends Gardner voluntarily assumed the duty to provide advice to township commissioners, such as Yoder, and induced reliance on his advice. He allegedly did this knowing his advice was the exclusive source of information for the highway commissioners as to the safety of their highways. Gardner allegedly knew of the unreasonably dangerous condition of Fast Avenue caused by placement of the S-curve warning sign. Once Gardner decided to provide advice, knowing others relied on it, he was liable for the advice given because this was a ministerial act rather than a discretionary act. We disagree. Advice is necessarily discretionary as it is personal judgment. Again, had the excerpts from the Manual of Uniform Traffic Control Devices been timely presented, the result might be different. Given the record before us, we conclude Gardner is immune from liability because the giving of advice was a discretionary function.

■ The plaintiff argues Tazewell County is not covered by the Act. The plaintiff is incorrect. The Act defines "Local public entity" as including "a county, township, municipality, municipal corporation." (Ill. Rev. Stat. 1987, ch. 85, par. 1—206.) Because Gardner is not liable to the plaintiff, the County is protected from liability. Ill. Rev. Stat. 1987, ch. 85, par. 2—109.

The next issue involves the constitutionality of the six-month notice requirement and $10,000 damage limit on actions against county superintendents of highways under sections 3 and 5 of the Code (Ill. Rev. Stat. 1987, ch. 121, pars. 383, 385). Section 3 of the Code provides, in part:

> "Within 6 months after the date that any such injury was received, any person who is about to commence any civil action against any County Superintendent of Highways on account of such injury shall file in the office of such County Superintendent of Highways *** a statement in writing signed by him *** giving the name of the person to whom such cause of action has accrued, the place or location where the injury occurred,

the nature of the injury and the name and address of the attending physician, if any." (Ill. Rev. Stat. 1987, ch. 121, par. 383.)

Section 5 of the Code states:

"In any such civil action where it is found that there was no contributory negligence attributable to the plaintiff and that there was actionable negligence attributable to the defendant, the court or jury, as the case may be, may grant fair and reasonable compensation for the injury sustained but not in excess of $10,000." Ill Rev. Stat. 1987, ch. 121, par. 385.

■ The plaintiff contends these provisions are unconstitutional, as they violate her right to equal protection. This court need not decide this issue, given our resolution of the issues involving Gardner and Tazewell County. "A reviewing court will decide a constitutional question only where it is essential to disposition of the case." (*In re Application of the County Collector of Kane County* (1989), 132 Ill. 2d 64, 73, 547 N.E.2d 107, 111.) "[A] court should not decide a cause on constitutional grounds if it can be determined on other grounds." *Lake Louise Improvement Association v. Multimedia Cablevision of Oak Lawn, Inc.* (1987), 157 Ill. App. 3d 713, 716, 510 N.E.2d 982, 985.

■ The circuit court granted the motion made by Gardner and Tazewell County for dismissal of counts III and IV of the plaintiff's complaint under section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619). "A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. [Citations.] The standard of review on appeal is whether the complaint alleged facts which sufficiently state a cause of action." (*Alford v. Phipps* (1988), 169 Ill. App. 3d 845, 857, 523 N.E.2d 563, 571; *Ronning Engineering Co. v. Adams Pride Alfalfa Corp.* (1989), 181 Ill. App. 3d 753, 757-58, 537 N.E.2d 1032, 1035.) Counts III and IV of the complaint, against Gardner and Tazewell County, respectively, did not contain sufficient facts to state a cause of action and were properly dismissed by the circuit court.

We decline to address two additional issues raised by the plaintiff: whether the 1970 Illinois Constitution abolished public officials' common law immunity and whether the Illinois Supreme Court, in *Mora*, equated common law public officials' immunity with the immunity provided public employees in section 2—201 of the Act. Although we see the two issues are arguably present from the plaintiff's position, we need not reach them given our conclusions Yoder and Gardner were

involved in discretionary functions. Even if the plaintiff were correct on both points, the outcome of the case would not change.

The circuit court of Tazewell County is affirmed.

Affirmed.

GREEN and STEIGMANN, JJ., concur.