JOAN ELLISON, Plaintiff-Appellant, v. THE VILLAGE OF NORTHBROOK *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—92—0183

Opinion filed March 31, 1995.—Rehearing denied June 2, 1995.

David A. Novoselsky and Linda A. Bryceland, both of Chicago, for appellant.

Thomas J. Keevers and Joseph P. Postel, both of Chicago, for appellees.

JUSTICE TULLY delivered the opinion of the court:

Plaintiff, Joan Ellison, brought the present action against defendants, Village of Northbrook (hereinafter Northbrook) and Pinner Electric Company (hereinafter Pinner), to recover damages for injuries she sustained in an automobile accident. Northbrook filed a motion to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619 (now 735 ILCS 5/2—619 (West 1992))) citing the Local Governmental and Governmental Employees Tort Immunity Act (hereinafter Act) as a bar to plaintiff's claim. (Ill. Rev. Stat. 1987, ch. 85, par. 1—101 *et seq.* (now 745 ILCS 10/1—101 *et seq.* (West 1992))). Pinner filed a motion to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615 (now 735 ILCS 5/2—615 (West 1992))) asserting it owed no duty to the plaintiff. The trial court sustained both motions and dismissed plaintiff's third amended complaint at law. It is from this order plaintiff now appeals pursuant to Supreme Court Rule 304(a). 134 Ill. 2d R. 304(a).

## FACTUAL BACKGROUND

On July 25, 1988, plaintiff, Joan Ellison was injured in an automobile accident at the intersection of Waukegan Road and Walters Avenue in the Village of Northbrook. Plaintiff was travelling northbound on Waukegan and attempted to turn left on to Walters when she was struck by two vehicles proceeding in a southerly direction on Waukegan. Plaintiff initially filed suit against the drivers of these two vehicles.

Plaintiff subsequently amended her complaint to include as defendants Northbrook and Pinner. In her third amended complaint, plaintiff alleged that Northbrook disregarded its duty to exercise ordinary care and was guilty of one of the following careless and negligent acts or omissions of duty:

"(a) Failed to split the phase on Waukegan Road traffic signal for north and southbound traffic to provide sufficient time for northbound traffic to turn west and southbound traffic to turn east.

(b) Failed to provide an intersection that is reasonably safe for northbound traffic turning left by failing to stagger the timing in the Waukegan Road traffic control signal.

(c) Failed to monitor the intersection and make traffic engineering studies after having prior notice of numerous accidents at said intersection.

(d) Failed to monitor the approach speeds of vehicles from all sides of the intersection.

(e) Failed to make origin and destination studies and/or traffic counts of each leg of the Walters Avenue and Waukegan Road intersection.

(f) Failed to provide sufficient time for motorists to turn left at said intersection by splitting the light phase or installing a turn arrow.

(g) Failed to stagger starting times of northbound and southbound lights on Waukegan Road."

At the time of the occurrence, Pinner was under contract with Northbrook to maintain the traffic signals in question at the time of the occurrence. Plaintiff alleged Pinner also disregarded its duty to exercise ordinary care and was guilty of the same careless and negligent acts against Northbrook. Plaintiff further alleged Pinner failed to maintain the traffic control signals for northbound and southbound traffic on Waukegan in a reasonably safe manner.

The intersection at Waukegan and Walters is a four-way intersection protected by the standard red/yellow/green traffic lights. The traffic signal devices are traffic actuated such that the light on Waukegan remains green until an automobile approaches the

intersection travelling on Walters which triggers a change in the traffic signal phase. There is no left-turn signal for any direction on either street.

## OPINION

### I

Plaintiff contends that Northbrook was negligent in that it failed to exercise ordinary care in the *maintenance* of its traffic control devices. She alleges that the timing schedule of the traffic lights as established by Northbrook created a hazardous condition for motorists in that it did not provide adequate time for an automobile to safely execute a left turn from Waukegan onto Walters. Plaintiff's complaint does not allege that the lights were not operating in accordance with their preset timing schedule as established by the State of Illinois or were malfunctioning in any other way. Instead, plaintiff claims the timing sequence as established was not proper and the intersection was thereby rendered unsafe.

In response to plaintiff's argument, Northbrook argues that the timing sequence is formally established by the Department of Transportation of the State of Illinois and to change or alter that sequence is not a maintenance function but is a design alteration or upgrade of the traffic control devices at the intersection. Therefore, Northbrook asserts it is shielded from liability pursuant to the Act. We agree with Northbrook.

■ In considering the propriety of the dismissal of a complaint, we must accept all properly pleaded facts as true and limit our review to questions of law presented by that pleading. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554, 328 N.E.2d 538.) A plaintiff's claim should be dismissed on the pleadings only if there exists no set of facts which could entitle plaintiff to recover. *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504, 565 N.E.2d 654.

■ The tort liability of municipalities is governed by the Act (*Goebig v. City of Chicago* (1989), 188 Ill. App. 3d 614, 616, 544 N.E.2d 1114), which immunizes local governments and their employees from liability arising from the "operation of government." (Ill. Rev. Stat. 1987, ch. 85, par. 1—101.1 (now 745 ILCS 10/1—101.1 (West 1992)).) "Operation of government" has been judicially interpreted to encompass those acts which are unique to the particular public office and discretionary in nature. (*Greeson v. Mackinaw Township* (1990), 207 Ill. App. 3d 193, 565 N.E.2d 695.) Conduct which is not subject to immunity under the Act, ministerial acts, has been defined as that performed on a given state of facts in a prescribed manner, in obedi-

ence to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act. (*Greeson*, 207 Ill. App. 3d at 201.) This court has recently held that the act of maintaining existing highways is ministerial in nature and thus municipalities would not enjoy immunity from suit for the negligent performance of that act. *Long v. Friesland* (1988), 178 Ill. App. 3d 42, 532 N.E.2d 914.

■ Section 3—102(a) of the Act[1] codifies the common law duty of a local public entity to maintain its property. (*Greeson v. Mackinaw Township* (1990), 207 Ill. App. 3d 193, 565 N.E.2d 695.) This duty has been interpreted to include the duty to maintain public highways within its boundaries in a reasonably safe condition. (*Smith v. County of White* (1989), 191 Ill. App. 3d 569, 548 N.E.2d 19.) Furthermore, while a municipality is immune from liability where an injury is caused by the failure to initially provide a traffic control device (Ill. Rev. Stat. 1987, ch. 85, par. 3—104 (now 745 ILCS 10/3—104 (West 1992))) once having undertaken the task of installing traffic control devices, the municipality is obligated to install and maintain them with reasonable care. *Parsons v. Carbondale Township* (1991), 217 Ill. App. 3d 637, 577 N.E.2d 779.

The principal issue here is whether plaintiff's claims as asserted in her complaint are indeed maintenance activities or whether those activities actually exceed the scope of what is implicit in maintenance.

■ A careful review of the record reveals that the traffic control signals in question are owned by the State of Illinois and maintained by Northbrook pursuant to a contract with the Department of Transportation of the State of Illinois.[2] This contract indicates with specificity Northbrook's obligations in executing its maintenance

---

[1]Section 3—102(a) provides:

"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to *maintain* its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a) (now 745 ILCS 10/3—102(a) (West 1992)).

[2]The contract between the Village of Northbrook and the State of Illinois, in pertinent part, provides:

function with respect to these traffic control signals. The responsibilities delineated all relate to keeping the equipment in a clean, properly adjusted and working order. There is no obligation to make traffic control studies and update equipment as plaintiff suggests nor is there any duty to monitor or change the timing schedule of the lights. Moreover, Northbrook's director of public works provided the following deposition testimony:

"The maintaining agency agrees to:

1. Patrol the traffic control signal system on a regular basis and replace burned out lamps or damaged sockets as may be required. All lamps should be replaced as frequently as experience proves necessary to prevent undue failures. The reflector and lens should be cleaned each time a lamp is replaced.

2. Keep signal heads properly adjusted, controller cabinets, signal posts, and controller pedestals tight on their foundations and in alignment at all times.

3. Keep detector equipment in proper working order at all times.

4. Check the controllers, relays and detectors at frequent intervals to ascertain that they are functioning properly and make all necessary repairs and replacements.

5. Remove to clean and overhaul the controllers, relays, special auxiliary control equipment, and time clock once a year or more often if necessary. Keep interior of controller cabinet in a neat condition at all times. Solid state equipment should be cleaned and tested for proper timing at least once every two (2) years.

6. Replace burned out fuses.

7. Clean reflectors, lenses, and lamps once every six (6) months.

8. Repaint all signal components exposed to weather on a regular basis.

9. Repair or replace any and all equipment damaged by any cause whatsoever.

10. Be responsible to make recovery for damage to any part of the installation or systems from the party causing the damage.

11. Provide alternate traffic control during a period of failure or when the controller must be disconnected. This may be accomplished through installation of a spare controller, placing the intersection on flash, manually operating the controller, or manually directing traffic through the use of proper authorities.

12. Provide skilled maintenance personnel who will be available at all times to respond without delay to emergency calls. This may be provided by agency forces, contract, or maintenance agreement.

13. Provide the DEPARTMENT the names, addresses, and telephone numbers of at least two persons who will be available for emergency repair of the traffic signals and keep the DEPARTMENT informed of any changes of same."

"Q. Who is responsible for the design of the lights at Walters and Waukegan?

A. The State of Illinois.

Q. Who is responsible for setting the timing of the lights at Waukegan and Walters?

A. The State of Illinois.

Q. Are changes to the design of the traffic signals at Waukegan and Walters determined by the State of Illinois?

A. Yes.

Q. Does the Village of Northbrook on its own have any authority to change the design of the traffic lights at Waukegan and Walters?

A. No."

This testimony clearly establishes that the State is responsible for the design of the devices as well as the establishment of the timing sequence of the lights. Because any change to either the design or the timing of the lights must be authorized by the State of Illinois, it is clear that Northbrook's responsibility insofar as maintenance of the traffic lights is limited to ensuring that they operate in accordance with the State mandate. Consequently, we hold the trial court was correct in dismissing plaintiff's complaint.

II

Plaintiff additionally argues that Pinner was negligent in that it disregarded its duty to exercise ordinary care in the maintenance of the traffic signals. Plaintiff further alleges that Pinner breached its duty to maintain the signals by failing to split the phase or stagger the timing of the traffic control signals at the intersection and failing to monitor the traffic at the intersection. In support of this allegation, plaintiff cites to the contract between Pinner and Northbrook wherein it states that Pinner is to "[m]aintain proper timing and dial settings of the controls and detector relays as directed." Plaintiff submits that this paragraph is ambiguous as to whether the term "maintain proper timing" includes responsibility for setting the timing mechanisms in a manner which provided sufficient time for vehicles making left-hand turns to clear the intersection. We do not think this is so.

■ In a cause of action alleging negligence, the plaintiff must establish the existence of a duty, a breach of that duty and an injury proximately resulting from the breach of that duty. (*Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 482 N.E.2d 358.) While questions of whether a duty has been breached and whether that breach proximately caused an injury are questions of fact, the determination of the existence of a duty is a question of law. (*Curtis v.*

*County of Cook* (1983), 98 Ill. 2d 158, 163, 456 N.E.2d 116.) Whether a duty exists depends upon whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff. *Grove v. City of Park Ridge* (1992), 240 Ill. App. 3d 659, 661, 608 N.E.2d 421.

■ Essentially, the contract between Northbrook and Pinner delegated Northbrook's duties regarding maintenance of the traffic control devices pursuant to its contract with the State of Illinois. Northbrook did not impose upon Pinner any additional obligations other than those which it had under its contract with the State of Illinois. Therefore, because Northbrook is not responsible for changing the timing of the lights, Pinner cannot be held responsible for altering or changing the timing of the lights at the intersection of Waukegan and Walters. Consequently, we hold that Northbrook was not bound by a duty to do anything regarding the traffic control devices other than to maintain the status quo. Therefore, the trial court was correct in its dismissal of plaintiff's complaint.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed in all respects.

Affirmed.

RIZZI and GREIMAN, JJ., concur.